# Ward v. The State.

*Indictment for Burglary.*

1. *Disjunctive averments in indictment.* — It is no objection to an indictment for burglary, under the forms allowed by the Code, that the house broken into is alleged, in the disjunctive, to have been " a building within the curtilage of a dwelling-house, or a shop, storehouse, warehouse, or other building of W. H."

2. *Bad punctuation.* — Bad punctuation does not vitiate an indictment.

3. *Admissibility of confessions.* — The prisoner's confessions in this case, made to the bailiff who had him in custody, were held to have been improperly received as evidence against him; because the bailiff had said to him, while in his custody, that if he would confess the offence, and tell where the stolen property was, he should be turned loose; and it was not shown that anything had afterwards occurred to destroy the influence of the promise thus made.

FROM the Circuit Court of Barbour.

Tried before the Hon. J. McCALEB WILEY.

The indictment in this case, omitting the heading, &c., was in these words : The grand jury of said county charge, that, before the finding of this indictment, Lamb Miller and Peter Ward broke into and entered a building within the curtilage of the dwelling-house ; or into a shop, storehouse, warehouse, or other building of William Harris, in which goods, merchandise, or other valuable thing was kept, for use, sale, or deposit, with intent to steal ; against the peace," &c.   The defendant Ward demurred to the indictment, " because it does not aver or state the ownership of the dwelling, within the curtilage of which the house alleged to have been broken into was situated ; and for the further reason, that the offence is alleged in the disjunctive."   The court overruled the demurrer, and each of the defendants then pleaded not guilty ; on which plea issue was joined, and a trial had.   After the evidence for the prosecution was closed, the court directed an acquittal as to Miller ; and the jury having afterwards returned a verdict of guilty as to the defendant Ward, he was sentenced to imprisonment in the penitentiary for the term of three years.

On the trial, as appears from the bill of exceptions, it was shown that the smoke-house of the prosecutor, William Harris, was broken into on Wednesday night, and several pieces of bacon were stolen from it ; and that on the following Sunday, warrants having been issued by one Wilkinson, a justice of the peace, for the arrest of the defendants, said Ward was arrested at home by a bailiff, who was accompanied by several other persons, " and who was authorized by them, before the arrest was made, to say to Peter, that he should be turned loose, if he would acknowledge the offence, and tell where the bacon was."   After the arrest had been made, and the party were going to the house of the justice, " the bailiff, who was riding near Peter, the others being some short distance behind, said to him, that he was instructed by those men to tell him that, if he would confess the offence, and tell where the bacon was, he should be turned loose."   The bailiff testified, that the prisoner " went along about one hundred yards before he made any reply, and then said, that ' it was hard to confess a crime of which he was not guilty,' or words to that effect ; and that he then told him, ' very well, you are a free man, and can do as you please,' or words to that effect."   When the party reached the house of the justice, the prisoner was chained, and was so kept until the trial on the next morning.   " There were a dozen persons, or more, in and about the place all the day, and amongst them a preacher named Cumby.   On Monday, before the trial, said Cumby and one Bulger took the

[Ward *v.* State.]

prisoner into a room, and remained with him as much as fifteen minutes; and the preacher told him, that it was right to tell the truth, and that it was best to tell the truth. Bulger and Cumby then called the justice to come and hear the prisoner's confessions. The justice then went into the room, and then the prisoner made his confession in the presence of said Bulger and Cumby. Once or twice during the day, before the trial, it was said about in the crowd, that Peter was about to confess; and then the crowd would gather around to hear him. Peter was at that time chained around the neck, and to a post on the piazza; and the bailiff told him, that he would shoot him, if he attempted to escape. Peter's confession at that time was the same he had made to the justice; and when he was through, some one in the crowd remarked, 'That's right,' or 'That's a man.' Afterwards, on Tuesday, while the defendants were being carried to jail, both being chained together, Peter began to confess again, when Miller threatened to knock him down; but the bailiff interfered, and nothing more was said. There was no proof that the prisoner Peter, who was a colored man, was at any time cautioned before making confessions, or at the time of confessing, or afterwards." On this proof, the court admitted the prisoner's confessions as evidence; to which ruling he reserved an exception.

The overruling of the demurrer to the indictment, and the admission of the confessions, are now assigned as error, together with other matters which are not material.

JERE N. WILLIAMS and JNO. A. FOSTER, for the prisoner.

BEN. GARDNER, Attorney General, for the State.

BRICKELL, J. — 1. The indictment is in substantial conformity to the form prescribed by the Code. This form authorizes laying the offence in the disjunctive; and however objectionable such an allegation at common law, it must be deemed sufficient when authorized by statute.

2. It is certainly true, that an indictment for burglary must allege correctly the ownership of the house broken and entered. This indictment contains an averment of ownership; but it is insisted that because of the punctuation adopted by the pleader, the averment of ownership can be referred only to the shop, storehouse, warehouse, or other building, and not to the dwelling-house. A semicolon is interposed between the word "dwelling-house," and the succeeding words, "or into a shop, storehouse, warehouse, or other building of William Harris." Grammatically, a semicolon indicates a separation between

[Ward *v.* State.]

parts or members of a sentence, more distinct than that marked by a comma; and it may be that the sentence of the indictment, grammatically construed, would confine the allegation of the ownership to the shop, storehouse, warehouse, or other building. Originally, pleadings in court, civil and criminal, were delivered orally, and apprehended by the ear, and not by the eye, which alone takes cognizance of punctuation. In practice at this day, though the pleadings must be in writing, and the accused is entitled to a copy of the accusation against him, he generally derives his knowledge of the charge, and the manner in which it is preferred, from the reading of the indictment when he is arraigned, or put on trial, and not from an inspection of it. Hence, false grammar, or ill punctuation, cannot be regarded in the construction of, or as vitiating an indictment. *Commonwealth* v. *Wright*, 1 Cushing, 46. The allegation of ownership in this indictment must be considered as referring to, and embracing the dwelling-house, as well as the other buildings. Thus considered, it is sufficient.

3. The rule as to the admissibility of a prisoner's confessions, is well understood. Before they can be received, it must be shown that they were voluntary : that is, made without the appliance of hope or fear, by any other person. Whether the confessions are voluntary, the court must determine, upon consideration of the age, condition, situation, and character of the prisoner, and the circumstances under which they were made. 1 Green. Ev. § 219; *Brister* v. *State*, 26 Ala. 107. If the confessions had been made to the bailiff, immediately on his statement to the accused, that if he would confess the offence, and tell where the bacon was, he should be turned loose, it would scarcely be contended they should be received in evidence. They would be regarded as springing from the hope of release from imprisonment, and from criminal accusation, promised by the declarations of the bailiff. We cannot say that the hope thus inspired was not operating on him, when he made the confession on the next day, and during the continuance of the arrest. So far as the record discloses, nothing occurred to remove or diminish it. The persons present were anticipating his confession on the day it was made ; for it was said among them, and most probably in the hearing of the prisoner, he was about to confess. The bill of exceptions discloses no fact, on which the confession could have been anticipated, except as the result of the promise previously made to the accused. When the confession was made, the prisoner was taken into a room by the bailiff, and there in the presence of a preacher, who told him, "It was right to tell the truth, and it was best to tell the truth," made the confession given in evidence. Whether the prisoner said he would or

not confess, is not shown; but the magistrate was called to hear the confession, and it was made. The accused having been committed, on the next day, as he was being carried to jail, " began to confess again," but was prevented by threats from one charged with the same crime. The inducement to the accused to confess guilt, whether guilty or innocent, was the highest which could have been offered. If he would confess, and tell where the bacon was, he was to be turned loose. Whether the confession was true or false — whether he was guilty or innocent, the benefit of the confession to him was to be the same. This inducement is held out by one having authority — the officer having him in custody. Confession following promises or threats, made by one having authority over the prisoner or prosecution, are jealously examined, and sometimes rejected, when, if the promise or threat had proceeded from one not having such authority, they would be received. Mr. Greenleaf says : " The authority known to be possessed by those persons, may well be supposed both to animate the prisoner's hope of favor on the one hand, and on the other to inspire him with awe, and in some degree to overcome the powers of his mind." 1 Green. Ev. § 222.

In view of all the circumstances attending the prisoner's confessions, we are not prepared to say they were voluntary, but incline to the opinion that they resulted from the hope of release inspired by the bailiff's promise. The court therefore erred in admitting them ; and for this error, the judgment is reversed, and the cause remanded. The prisoner will remain in custody until discharged by due course of law.