# Matthews *v.* The State.

### Indictment for Burglary.

1. *Sufficiency of indictment.*—In an indictment for burglary (Rev. Code, § 3695), an averment that corn, "*a valuable thing,*" was then and there kept for sale," &c., in the building broken into and entered, is sufficient, without an additional averment of the value of the corn.

2. *Abstract charges.*—The rule is well settled in this court, that an abstract charge, though it may assert an incorrect legal proposition, is not a cause of reversal, unless it appears that the jury were thereby misled, to the prejudice of the party excepting; and that the refusal of an abstract charge, however correct in point of law, is not an error.

3. *Confessions; provinces of court and jury, as to admissibility and credibility.* When the court has decided that a confession was made voluntarily, and has therefore allowed it to go to the jury, the province of the jury is limited to a

[Matthews v. The State.]

consideration of its credibility; consequently, a charge asked, which refers to them for decision the question whether it was voluntary, is properly refused.

4.   *Circumstantial evidence; sufficiency of.*—In criminal'cases, the test of the sufficiency of circumstantial evidence is, not whether it produces as full conviction as the positive testimony of a single credible witness, but whether it excludes from the minds of the jury every reasonable doubt of the defendant's guilt.

5.   *Ownership of building broken into and entered.*—The ownership of the building broken into and entered is properly laid in the person who was in the undisputed occupancy and possession thereof at the time of the burglary.

FROM the Circuit Court of Hale.

Tried before the Hon. GEORGE H. CRAIG.

The indictment in this case, which was found at the April term of said court, 1876, charged that the defendant, Samuel Matthews, "broke into and entered a corn crib, the property of Henry A. Tayloe, a building in which corn, a valuable thing, was then and there kept for use, sale, or deposit, with intent to steal." The defendant demurred to the indictment, as the judgment entry states, "on the ground that there is no allegation of the value of the corn kept in the crib;" and his demurrer being overruled, he then pleaded not guilty. During the trial, as appears from the bill of exceptions, when Henry A. Tayloe, the principal witness on the part of the prosecution, who testified to the circumstances connected with the burglary, stated that about eighteen bushels of corn were taken from his crib, and that it was worth about fifty cents per bushel, "the defendant objected to any proof of the value of the corn, because the indictment did not allege any value"; and he reserved an exception to the overruling of his objection, and to the admission of the evidence.

"Henry A. Tayloe, a witness on the part of the State, testified, that during the year 1875, and before the finding of this indictment, he was in the habit of rising about day-break, and riding to the depot at Macon Station, to meet the train and attend to his business as express agent, and generally visited his squad of laborers. On getting up Tuesday morning, he saw in his yard an ox-cart, full of corn, about eighteen bushels, and a yoke of oxen in his stable yard. He recognized the cart, by its peculiar spokes, as the property of George Matthews, a brother of the defendant, who lived about a mile up the road; one of the oxen belonged to said George, and the other belonged to the defendant. Witness rode across the woods to the double cabin of Frank Sledge, who was one of his laborers. The defendant and one Lewis Shields, who were also in his employ, stayed there; and upon inquiry, he found they were both absent. Witness then visited the premises of Peter Washington, another laborer, who lived several hundred yards off, up the Linden

road, on the other side, and, on viewing the crib, found that corn had been taken out of it, through a crack in the rear, made by pulling off a plank about ten feet long; saw shucks and some corn scattered about, and then tracked the wagon, or cart, from the public road to Macon Station near his residence, into the woods, towards Frank Sledge's double cabin; then, out of the woods, into the public road to Linden, and up the road to Peter Washington's house, where the track turned back into the woods opposite the crib; and having tracked it twenty or thirty yards further, he lost the track in the woods. Witness then rode back to the station, and, remembering that the defendant had relations in Uniontown, whom he was accustomed to visit, telegraphed to have him arrested; and receiving a reply that he was arrested, witness went over to Uniontown on the passenger train early Wednesday morning, and brought him back on the freight train the same day, and took him to Greensboro the next day, where witness made affidavit, and had him held for the burglary. After the proper predicate had been laid for the introduction of confessions, witness testified, that he found the defendant in the guard-house at Uniontown, and that the defendant, while going from the guard-house to the depot, voluntarily confessed that he and Lewis Shields put the corn in the cart. Witness testified, on cross-examination, that no threats, fears, hopes, or promises were used by him to induce the confessions; that he did not talk much to the defendant, who was sullen and not inclined to talk; that he had the defendant's hands tied behind him, and the rope running around back of his neck; that he told the defendant, in opening the conversation, that two of them could not have moved that corn; to which the defendant replied, 'We did it.' Witness further testified, that defendant said he hired the cart to Lewis Shields, and that he (witness) would not find Lewis there when he got back; and witness said, that he had not seen Lewis since the corn was taken from Peter Washington's crib. Witness testified, also, that no person but the conductor of the freight train was present at any conversation had on the train when leaving, or after leaving Uniontown; and that one Armstead, a half-brother of the defendant, was one of the first persons he saw in Uniontown." Said Armstead, who was introduced as a witness by the defendant, testified, "that he had resided with Mrs. Shields, at or near Uniontown, for about twenty years; that he saw Capt. Tayloe on the occasion of the defendant's arrest in Uniontown, and went down to the depot where he was, with his hands tied behind his back, and carried him a lunch to eat, and asked Capt. Tayloe to unloose his hands and let him

eat; that he heard Capt. Tayloe tell the defendant, that he would not carry him to Greensboro if he would say who put the corn in the wagon; and that the defendant replied, he had told him that he let Lewis have the wagon. Said witness testified, on cross-examination, that this conversation occurred in his presence, at the depot in Uniontown, where Capt. Tayloe was waiting for the train." This is all the evidence set out in the bill of exceptions, relative to the defendant's confession; and the only ruling of the court, in reference to that confession, was its refusal to give the second charge asked by the defendant, as hereinafter stated.

"Henry A. Tayloe testified, also, that he was in the occupation of the premises on which the crib was situated; that the only interest, or estate, he had in the land, was under a lease made to him by his wife, a few months before her death, which occurred some time during the summer of the year before his crib was ——(?) Witness admitted, that a record of the Probate Court of Hale county, then exhibited to him, which purported to be the record of a lease executed by him to one Maupin, his son-in-law, in April, 1874, for six years, of certain lands in Hale county, included the lease for 1875 of the lands on which Frank Sledge and Peter Washington lived, and which they worked last year; also, that said lands had been duly conveyed, about eighteen years ago, by his brothers, to his wife for her life, with remainder over to his children." This is all the evidence shown by the bill of exceptions, as to the ownership or possession of the land or the crib.

"Peter Washington, a witness for the State, testified, that about three hours before day, as near as he can recollect, on a Monday night, he was awoke by the barking of his dogs, and went out, and followed them across the public road into the woods, where, about eighty or ninety yards from the road, he found an ox-cart, hitched to a tree it had run against; that when he approached, the person on the cart jumped down, and ran in the direction of Macon Station; that he called to Stephen Link to come, and they drove the cart, which was full of corn, into Capt. Tayloe's yard, and turned the oxen into his stable lot; that he found a plank torn off a crack in the crib, which he had himself nailed on with tenpenny nails; that the crib was of oak logs, about the size of his leg, and in the rough state just as they were cut; and that from the signs of shucks, and a panel of fence being down by the crib, that the corn had just been taken out of the crack; that the moon was then just going down, and it was dark; and he went back to bed, and slept until day." This was all the evidence adduced on the part of the prose-

cution. The defendant introduced several witnesses, whose testimony tended to prove an *alibi;* but it is unnecessary to notice it.

"This being all the evidence, the court charged the jury, that if they believed from the evidence, beyond a reasonable doubt, that the defendant broke into and entered a corn crib, the property of the person named in the indictment, in which corn, a thing of value, was then and there kept for use, sale, or deposit, with intent to steal, in the county of Hale, within three years before the finding of the indictment, then they must find him guilty; but, if they did not find from the evidence that the State had proved to their minds, beyond all reasonable doubt, each and every one of such ingredients of the offense with which he is charged, then it was their duty to acquit the defendant; that if they believed, from the evidence, that the crib was in the occupation of H. A. Tayloe, such occupation was sufficient proof of the fact of property as laid in the indictment; and that if the corn in the crib was that of said Tayloe, the employer of the laborers, and of a squad of laborers, who were entitled to one-third part thereof, then Capt. Tayloe and the laborers were not owners in common of the corn, but the corn was, for the purposes of this indictment, Capt. Tayloe's."

The defendant excepted to this charge, "and to each and every part thereof," and then requested the following charges, which were in writing, and were refused by the court, exceptions being duly reserved by the defendant to the refusal of each:

1. "If the jury believe that a part of the corn in Peter Washington's crib was owned by the defendant, in conjunction with other laborers employed by H. A. Tayloe, the prosecutor and alleged owner of the crib, there could be no conviction under this indictment."

2. "If the jury believe that the defendant's confessions, as testified to by H. A. Tayloe, were made by a boy under age, who had been confined in the guard-house all the night previous, and while he was tied, and about to be carried to another county, on the freight train, with the expectation of being arrested and committed to jail, then, in arriving at a conclusion as to whether the confession was voluntary or not, they may consult their general knowledge of human nature."

3. "If the jury believe that the evidence in this case is wholly circumstantial, then, in order to convict the defendant, the evidence should be as strong as the positive testimony of one credible witness, who proves the guilt of the defendant beyond all reasonable doubt."

4. "If it should appear from the evidence that the hands on Capt. Tayloe's place worked for one-third of the crop, and that the defendant was one of the hands, and that the corn in the crib belonged to them, and had not been divided, then Capt. Tayloe and the hands were tenants in common of the corn; and if the defendant, as one of said hands, had an interest in the corn in said crib, he can not be convicted."

5. "If the jury believe from the evidence that Capt. Tayloe's possession of the crib was derived from a lease to him of the lands on which it was situated, by his wife, a few months before her death, which occurred during the year before the crib was entered, and that his wife had only a life estate, the remainder of which went to her children, then they must acquit the defendant."

The overruling of the demurrer to the indictment, and the other rulings to which, as above stated, exceptions were reserved by the defendant, are the matters now presented for revision.

THOS. R. ROULHAC and W. W. DUGGER, for the defendant.

JNO. W. A. SANFORD, Attorney-General, for the State.

BRICKELL, C. J.—The indictment is sufficient. It contains an averment of every fact essential to constitute the statutory offense of burglary. It was not necessary to aver the value of the corn kept in the crib. The averment that it was " a valuable thing," is sufficient.—Norris v. State, 50. Ala. 126; Webb v. State, 52 Ala. 422.

2. The charge given, and the several charges refused, in reference to the ownership of the corn, are mere abstractions. The bill of exceptions, though purporting to set out all the evidence, is silent as to the evidence of that fact. The only fact touching the ownership is, that it was in a crib, which was in the occupancy of Tayloe; and, consequently, the corn was in his possession. If the defendant, or other persons, under the facts assumed in the charges, would have an interest in it in common with Tayloe, and a right in common with him to the possession, these facts should have been proven, and proper instructions in reference to them requested. The charge given by the court, assuming to be applicable to such facts, is abstract; and we can not say that it misled the jury to the prejudice of the defendant. Whether it asserts a correct or incorrect legal proposition, it is unnecessary to inquire. The rule is well settled in this court, that an abstract charge, though it asserts the law incorrectly, is not a cause of reversal, unless it appears that the jury were

[Williams v. The State.]

thereby misled to the prejudice of the party excepting.—1 Brick. Dig. 336, §§ 11–13. Nor is the refusal of an abstract charge, however correct in point of law, an error.—Ib. 338, § 41.

3. Before the confessions of the defendant were received in evidence, the court inquired into the circumstances under which they were made. The inquiry resulted in ascertaining that they were voluntary, and they were admitted. The duty of determining whether a confession is voluntary, rests with the court alone; and, in arriving at a conclusion, the age, condition, situation, and character of the defendant, and the circumstances surrounding him when it was made, are all considered. When, after inquiry, the court determines it admissible, the jury must accept it—they can not reject it because, under the facts, they may deem it involuntary. Their duty is confined to its credibility.—*Brister v. State*, 26 Ala. 107; *Aiken v. State*, 35 Ala. 399; *Bob v. State*, 32 Ala. 560. The charge requested referred to the jury the inquiry whether the confession was voluntary, which the court had determined without objection from the defendant, and on which the jury were incompetent to pass. It was properly refused.

4. In *Faulk v. State* (52 Ala. 415), following *Mickle v. State* (27 Ala. 20), we said, the test of the sufficiency of circumstantial evidence is, not whether the circumstances proved produce as full conviction as the positive testimony of a single credible witness, but whether it excludes from the minds of the jury every reasonable doubt of guilt.

5. The evidence is uncontradicted, that Tayloe had undisputed occupancy and possession of the building averred to have been broken and entered. Against a mere wrong-doer unlawfully entering it, he could have maintained trespass. The ownership of the building was properly laid in him.— *Webb v. State*, 52 Ala. 422.

We find no error in the record, and the judgment is affirmed.