# Redd *v.* The State.

*Indictment for Murder.*

1. *Murder; sufficiency of indictment.*—An indictment charging that the defendant "unlawfully and with malice aforethought, did kill Lucy Lee by strangulation in this, to-wit, that he choked her to death," conforms substantially to the form prescribed by the Code, and is sufficiently

| 69 | 255 |
| 94 | 64 |
| 69 | 255 |
| 100 | 18 |
| 102 | 13 |
| 69 | 255 |
| 105 | 71 |
| 105 | 80 |
| 69 | 255 |
| 107 | 160 |
| 69 | 255 |
| 117 | 100 |
| 69 | 255 |
| 124 | 77 |

[Redd v. The State.]

definite as to the description of the means employed in perpetrating the killing.

2. *Organization of jury ; when free from error.*—Where on the trial of a prisoner charged with murder, four of the regular jurors whose names were on the *venire* served on the prisoner, were then engaged as jurors in the trial of another cause, the circuit court did not err in ordering their names, when called, to be laid aside and the names of others to be drawn in their stead, nor in ordering an additional number to be summoned as talesmen, the whole *venire* having been exhausted before the completion of the jury, from whom the panel was completed, without waiting for the return of the jurors who were so detained on the other trial.

3. *Admissibility of confessions.*—Where a confession was made at a late hour of the night to the sheriff of the county by a prisoner, who was confied in jail on the charge of murder, and who had been advised that a mob was gathering in town to rescue him from jail, and who knew that a guard of eight or ten persons had been summoned to protect him, one of whom had asked him " whether he was afraid of a mob," to which he replied in the negative, and to whom the sheriff himself, in the presence of a half dozen of the guards, had stated that he was "in a bad fix," and, in reply to a question put by the prisoner, had told him that "sometimes in cases of assault and battery and similar cases, it would be best to plead guilty,"—*held,* that such confession was obtained under the combined influence of both hope and fear and was inadmissible.

4. *Same.*—Another confession of a similar character made by the prisoner on the following morning to the jailor, when he went up to feed the prisoners, which seems to have been elicited by a question put by him to the prisoner, asking whether the prisoner had anything to say to him, is presumed to have originated from the same motives, and is inadmissible, in the absence of evidence showing, that the influence exerted upon the mind of the prisoner by the events of the previous night, had been removed.

5. *Whether confession voluntary or involuntary, a question for the court.* It is for the court to determine whether the confessions of a prisoner are voluntary or involuntary, and the court's decision of the question can not be reviewed by the jury. Hence, a charge is erroneous which submits to the jury the decision of this legal question, and should, for that reason, be refused.

6. *Weight of confessions ; in determining, the jury may consider the circumstances under which they were obtained.*—But it is equally well settled, that after confessions in any case have been admitted, the jury may consider the circumstances under which they were obtained, and the appliances by which they were elicited, including the situation and mutual relation of the parties, in the exercise of their exclusive prerogative of determining the credibility of the evidence, and the weight to which it is properly entitled in controlling the formation of the verdict.

APPEAL from Russell Circuit Court.

Tried before Hon. H. D. CLAYTON.

At the fall term, 1881, of said court, John Redd, the appellant, was indicted and tried for the murder of one Lucy Lee, and was convicted of murder in the first degree, and in accordance with the verdict of the jury, he was sentenced to be hanged. From this judgment he took an appeal to this court, and on the hearing of that appeal, at a former day of this term, the judgment of the lower court was reversed and the cause remanded. *Redd v. The State,* 68 Ala. 492. After the remandment of the cause, the defendant was again tried, convicted and sentenced

[Redd v. The State.]

to suffer the death penalty; and from the judgment then rendered the present appeal was taken. Two questions were reserved on the organization of the jury, but the facts relating thereto are stated in the opinion.

On the trial, it was shown that the body of the deceased was found at the bottom of a well soon after she had been missed, and evidence was introduced tending to show that she had been killed and her body thrown into the well, and that the defendant was the guilty agent. The State then examined as a witness the jailor, who had charge of the jail in which the defendant was then confined, who testified, in substance, that on the Sunday morning after the alleged killing, he went into the jail to feed the prisoners, and seeing the defendant looking at him, said to him, "John, have you any thing to say to me," to which the defendant replied, "what about—that girl," and on witness replying in the affirmative, and without making any threats or offering any inducements to elicit any confession from the defendant, and without doing any thing tending thereto, except to ask the question above quoted, the defendant confessed that he killed the deceased by choking her, and threw her body into the well. On the question of the admissibility of this confession, it was shown that on the day before the above conversation was had, a mob of about one hundred and fifty persons had assembled about three quarters of a mile from the jail in which the defendant was confined, for the alleged purpose of lynching the defendant; that of this mob twenty or more assembled in the town of Seale, in which the jail is located, on the night before said conversation was had, and that both of these assemblages had been dispersed by the sheriff by remonstrances, appeals and assurances, that the defendant should be safely kept and tried; that the defendant knew of the gathering of the mob; that on the night before the conversation was had, the sheriff had caused eight or ten persons to come to the jail for the purpose of guarding it; that about eleven o'clock that night the sheriff and five or six of the guards went to see the defendant and had some talk with him, when one of them asked the defendant if he was afraid of a mob, to which the defendant replied in the negative; that the sheriff, in reply to some questions asked him by the defendant, told him that he was in a bad fix; that "sometimes in cases of assault and battery and similar cases, it was best to plead guilty." It was then shown by the State, that the defendant, on that night and immediately after the foregoing conversation with the sheriff, confessed to him that he killed the deceased, stating some of the details connected with the crime. As recited in the bill of exceptions, "each witness who testified to confessions was first examined by the solicitor as to the circumstances of the confes-

17

[Redd v. The State.]

.sions, and testified that nothing was said or done, exciting hope .or fear, to induce the confessions, and on the evidence the court ·decided, that they were made freely and voluntarily and with- ·out constraint," overruled the defendant's separate objections to each confession, and allowed both of them to go to the jury as evidence, and also overruled motions of defendant to exclude the confessions from the jury, separately made, and to each of these rulings of the court the defendant separately excepted.

The court, on the written request of the solicitor, charged the jury, that "the question of the admissibility of confessions is purely a question of law for the court to decide, and when ad- .mitted by the court, the jury are bound to regard them as a part of the evidence in the case," and the defendant excepted. The defendant asked the court in writing to charge the jury, .among other things, as follows: "7. If the jury believe from the evidence that the defendant made any confessions, they may look to all the circumstances attending such confessions, such as the situation of the parties and their relations one to the ·other, in determining the truth or falsity of the confessions, or ·whether the confessions were made voluntarily or not." The ·court refused to give the charge as a whole, but gave all of it ·except the words, "or whether the confessions were made vol- ·untarily or not;" and the defendant excepted. Other excep- tions were reserved by the defendant, but as they are not passed upon by the court, they need not be here stated.

L. W. MARTIN, for appellant.

H. C. TOMPKINS, Attorney-General, for the State.

(No briefs came to the hands of the reporter.)

SOMERVILLE, J.—The indictment in this case is for mur- ·der, and charges that the defendant "unlawfully and with malice .aforethought, did kill Lucy Lee by *strangulation*, in this, *to-wit*, ·that *he choked her to death*." When the case was last here on :appeal, it was ruled, that the indictment conformed substan- ·tially to the form prescribed by the Code, and was sufficiently ·definite as to the description of the means employed in perpe- trating the killing. To this view we still adhere.—*Redd v. The .State*, 68 Ala. 492; Code of 1876, p. 991, Form 2.

The question raised on the organization of the jury was de- ·cided adversely to appellant in *Kimbrough v. The State*, 62 Ala. 248. It was there held, that in cases where some of the regu- lar jurors, constituting a part of the *venire* served on the pris- oner, were necessarily detained because engaged in the trial of another cause, and their names were drawn in the progress of

[Redd v. The State.]

the trial at bar, it was not error in the court to order their names to be laid aside and for others to be drawn in their stead. It was never intended that the dispatch of judicial business should be thus impeded.

So likewise, on the authority of the case last cited, where the whole *venire* had been exhausted before the completion of the jury, and prior to the return of the absent or detained jurors, we hold that there was no error in the action of the court ordering an additional number to be summoned from the proper class of persons to complete the jury.

The more modern rule, in reference to extra-judicial confessions made by persons charged with crime, has never prevailed in this State, holding, that, in order to justify their exclusion from evidence, they must have been induced by a *positive promise* made or sanctioned by a person in authority—*an officer of the law*. —Whart. Cr. Ev. 651. The settled rule of this court is, that all such confessions are *prima facie* involuntary, and they can be rendered admissible only by showing that they are voluntary and not constrained—or, in other words, free from the influence of *fear* or *hope*, applied to the prisoner's mind by a third person.—*Murphy v. The State*, 63 Ala. 1 ; *Johnson v. The State*, 59 Ala. 37 ; *Porter v. The State*, 55 Ala. 95 ; Clark's Man. Cr. Law, § 2480 ; Clark's Cr. Dig. § 326 ; 1 Brick. Dig. p. 509, § 859. It is no sufficient objection that they are elicited by mere adjurations to speak the truth, for this may be properly construed as advice to assert *innocence*, as well as to confess *guilt*.—*Aaron v. The State*, 37 Ala. 106 ; *King's case*, 40 Ala. 314 ; Whart. Cr. Ev. §§ 647, 672. Nor are confessions rendered inadmissible by the mere fact of being made to sheriffs, constables, jailors, or other officers of the law having the legal custody of the prisoner.—*Aaron's case, supra ;* Whart. Cr. Ev. §§ 647, 649. The true test is, whether, under all the surrounding circumstances, they have been induced by a threat or promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor. If so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence.—Whart. Cr. Ev. § 673 ; *Porter v. The State*, 55 Ala. 95. And it has generally been held, as said by Mr. Wharton, that "any advice to a prisoner by a person in authority, telling him it *would be better for him to confess*, vitiates a confession induced by it," and he cites numerous authorities in support of this view.—Whart. Cr. Ev. §§ 651, 674 ; *Rex v. Drew*, 8 C. & P. 140 ; *State v. York*, 37 N. H. 175 ; *Vaughan v. Com.*, 17 Grat. 576 ; *People v. Robertson*, 1 Wheeler's Cr. Cases, 67 ; *Porter's case*, 55 Ala. 95, *supra ;* 1 Greenl. Ev. §§ 219–220.

So when a confession has been once obtained through the

[Redd v. The State.]

influence of hope or fear, confessions of a similar character subsequently made, as is uniformly held, may be inferred to have originated from the same motive, and in the absence of evidence to the contrary showing that the original influence had ceased, or been dispelled, they are inadmissible.—Whart. Cr. Ev. § 677; *Ward v. The State*, 50 Ala. 120; *Bob v. The State*, 32 Ala. 560; Clark's Man. Cr. Law, § 2480; *Porter's case, (supra)*, 55 Ala. 95; 1 Greenl. Ev. § 221.

In the light of the above principles, the confessions made by the prisoner to Ferrell, the sheriff, should have been excluded from the jury. They seem to have been made at a late hour of the night, while the defendant was in custody, and to an officer of the law. The prisoner had been advised of the fact that a mob was gathering in town for the purpose of rescuing him from the jail where he was confined. He knew that a guard of eight or ten persons had been summoned to protect him, one of whom had asked him "whether he was *afraid of a mob*," to which he had replied in the negative. The sheriff himself, in presence of a half dozen of the guards, informed him that he was in a *bad fix*," and in reply to a question put by the prisoner, had told him that sometimes, in cases of assault and battery *and similar cases*, it was *best to plead guilty.*" Thereupon followed the confessions to which objection was taken. They were obtained, we think, under the combined influence of both *hope* and *fear*, and were improperly admitted.

Next morning other confessions of a similar character were made to the jailer, Tucker, when he went up to feed the prisoners, which seem to have been elicited by a question put by him to the prisoner, asking whether he (the prisoner) had anything to say to him (Tucker). There is no evidence tending to prove that the influence exerted upon the mind of the prisoner by the events of the previous night had been removed. These confessions were, in our judgment, also improperly admitted.

It is a well established maxim of the law, that the *admissibility* of evidence is always a question to be determined by the court, and its *weight* or *credibility* is for the determination of the jury. It is for the court, therefore, to say whether the confessions of a prisoner are *voluntary* or *involuntary*, and this question being judicially settled can not be reviewed by the jury. Hence a charge is erroneous which submits to them the decision of this legal question, and should, for that reason, be refused. The seventh charge requested by the prisoner was liable to this objection.—*Bob. v. The State*, 32 Ala. 560; *Matthew's case*, 55 Ala. 65.

There is no conflict whatever between this principle and the further one, which is equally well settled, that after the con-

[Leigh v. The State, ex rel. O'Bannon.]

fessions, in a given case, have been admitted, the jury may consider the circumstances under which the confessions were obtained, and the appliances by which they were elicited, including the situation and mutual relation of the parties, in exercising their exclusive prerogative of determining the credibility of the evidence, or the weight to which it is properly entitled in controlling the formation of the verdict.—*Brister's case*, 26 Ala. 107; *Matthews v. The State*, 55 Ala. 65.

For the error of the court in admitting the confessions of the prisoner made both to Ferrell and to Tucker, its judgment is reversed and the cause remanded.

In the meanwhile an order will be made that the prisoner be held in legal custody until discharged by due course of law.