(85 South. 840)

ANDREWS v. STATE.   (1 Div. 363.)

(Court of Appeals of Alabama.   June 1, 1920.)

1. CRIMINAL LAW ⊚⟜286, 870—SPECIAL PLEA AND VERDICT OF INSANITY NECESSARY.

In a prosecution for murder committed by a member of a mob, instructions asserting the proposition that, if defendant was insane at the time he committed the act and the jury were so reasonably satisfied, they must find the defendant not guilty on his plea of not guilty, were properly refused as being in direct conflict with Code 1907, §§ 7176, 7177, requiring special plea of insanity and a special verdict thereon.

2. CRIMINAL LAW ⊚⟜815(1) — INSTRUCTIONS NOT REQUIRING CONSIDERATION OF WHOLE EVIDENCE PROPERLY REFUSED.

In a prosecution for murder, instructions beginning by hypothesizing a condition in the minds of the jury, without requiring a consideration of the whole evidence, held properly refused as being confusing.

3. JURY ⊚⟜131(10)—QUESTION AS TO QUALIFICATIONS OF JURORS HELD WITHIN TRIAL COURT'S DISCRETION.

In a prosecution for murder, a question by court to each juror as to whether he would hang in a case where the evidence satisfied him beyond a reasonable doubt that defendant was a member of a mob that went into the county jail and killed a prisoner lawfully confined therein, if the evidence further satisfied him beyond a reasonable doubt that defendant in so doing was guilty of murder in the first degree, held within the discretion of the court.

4. CRIMINAL LAW ⊚⟜1106½(12)—QUESTION BY JUDGE AS TO QUALIFICATION OF JUROR, IF ERROR, HELD HARMLESS.

In a prosecution for murder, a question by the court to each juror on his qualification as to whether he would hang if satisfied beyond a reasonable doubt that defendant was a member of a mob that went into the county jail and killed a prisoner lawfully confined therein, and if he was satisfied thereon that prisoner was guilty of murder in the first degree, even if error was harmless, where defendant was guilty of manslaughter only.

5. CRIMINAL LAW ⊚⟜520(3) — CONFESSIONS ADMISSIBLE WHERE INFLUENCE OF PROMISES REMOVED BEFORE CONFESSION MADE.

Although promises have been used to obtain a confession, where it appears to the satisfaction of the judge that the influence of these promises were totally done away with before the confession is made, the evidence will be received.

6. CRIMINAL LAW ⊚⟜520(3) — CONFESSIONS ADMISSIBLE WHERE PROMISE WAS WITHDRAWN BEFORE CONFESSION MADE.

In a prosecution for murder, a confession by defendant held properly received, although the prosecuting attorney had made promises of immunity, where it also appeared that before the confession such promises had been withdrawn.

7. WITNESSES ⊚⟜77—WITNESS MUST FIRST DECLARE THAT HE KNOWS THE CHARACTER OF THE PERSON IN QUESTION.

Before a witness will be permitted to testify to character, he must first declare that he knows the character of the person about whom he is testifying.

8. CRIMINAL LAW ⊚⟜1056(1) — FAILURE TO NOTE RULING ON REQUESTED INSTRUCTIONS. HELD NOT REVERSIBLE ERROR IN ABSENCE OF EXCEPTION.

In a prosecution for murder, that trial judge, after reading the written charges to the jury, did not say "These are instructions given you by the court at the request of the defendant and are correct statements of the law to be taken by you in connection with what has already been said to you," was not error in the absence of exception.

9. HOMICIDE ⊚⟜287—INSTRUCTION TO ACQUIT FOR UNDISCLOSED MOTIVE HELD PROPERLY REFUSED.

In a prosecution for murder brought against a deputy sheriff who as a member of a mob broke into the county jail and killed a prisoner, an instruction to acquit if he merely joined the mob to protect the sheriff and to fool the other members thereof to get them to leave the jail, and not to injure or kill the prisoner, held properly refused as relating to a secret and undisclosed motive which the evidence did not show.

10. CRIMINAL LAW ⊚⟜1144(14) — EVIDENCE JUSTIFYING REFUSAL OF INSTRUCTIONS PRESUMED OMITTED, WHERE ALL EVIDENCE NOT BROUGHT UP.

Where, on an appeal in a murder case, the bill of exceptions does not purport to contain all the evidence, it will be presumed that there was sufficient evidence omitted to justify the trial court in its refusal of instructions.

Appeal from Circuit Court, Baldwin County; A. E. Gamble, Judge.

Sim Andrews was convicted of manslaughter, and he appeals. Affirmed.

Charge AA is as follows:

The court charges the jury that if they believe from the evidence in this case that Sim

Andrews did not take any part in the alleged mob, that he did not agree with any one or more to join in or assist in killing Frank Foukal, and that he did not encourage said killing and did not assist therein, but that he tried to dissuade the others, and merely took the part he did for the purpose of protecting the sheriff and of fooling the other persons and get them to leave the jail and not injure or kill Foukal, you must find him not guilty under his plea of not guilty.

The other facts sufficiently appear from the opinion of the court.

Webb, McAlpine & Grove, of Mobile, for appellant.

Counsel discuss the errors assigned, but without citation of authority.

J. Q. Smith, Atty. Gen., for the State.

The court was not in error in propounding the questions complained of. 138 Ala. 39, 35 South. 406; 72 South. 569; 74 South. 728. At most, they were discretionary. 153 Ala. 31, 45 South. 640. Counsel discusses the other assignments of error, but without further citation of authority.

SAMFORD, J. Charges 1, 2, 16, 21, 29, 34, 36, Q, and R, are all charges attempting to define "reasonable doubt" and "burden of proof." The court had already, in its oral charge, clearly defined the law of "reasonable doubt" and "burden of proof," and at the request of the defendant gave in writing 30 charges on this same subject, many of which might have been well refused; but, in any event, the propositions of law embraced in the above charges were fully covered in the written charges given at the request of the defendant and the general charge of the court. The multiplication of charges defining a reasonable doubt would tend rather to confuse than to elucidate.

[1] Charges A, B, C, and D assert the proposition that, if the defendant was insane at the time he committed the act and the jury are so reasonably satisfied, they must find the defendant not guilty on his plea of not guilty. These charges are in direct conflict with Code 1907, §§ 7176, 7177, and were properly refused.

[2] In addition to what we have said with regard to charges Q and R, these charges begin by hypothesizing a condition in the minds of the jury, without requiring a consideration of the whole evidence. As stated, the charges tend to confuse, and therefore were properly refused.

[3, 4] The defendant seriously contends that the court erred in asking each juror, upon his qualification, this question:

"Would you hang in a case where the evidence satisfied you beyond a reasonable doubt that the defendant was a member of a mob that went into the county jail and killed a prisoner lawfully confined therein, if the evidence further satisfied you, beyond a reasonable doubt, that the defendant in so doing was guilty of murder in the first degree?"

The defendant was convicted of manslaughter, and therefore it affirmatively appears he was not injured by the question, even if it was error, which we do not hold. On the contrary, we think it was discretionary with the court. Walker v. State, 153 Ala. 31, 45 South. 640.

It seems from the evidence that after the defendant had been arrested on a charge of murder, and while he was still in custody, those in authority endeavored by inducement and promises of immunity to get him to confess his guilt and to tell the whole truth as to the crime and who participated in it. This was at Bay Minette, the place where the crime was committed. The defendant made no statement at that time, but after being taken to Birmingham, and after the Assistant Attorney General having charge of the prosecution had said to defendant:

"I made you a proposition to the effect that if you would tell about this thing before we left Bay Minette, that I would stand between you and trouble. Well, now, I don't want to take any unfair advantage of you. That proposition is off. I had a reason then, but it is withdrawn. Everything you say, this gentleman is taking down, word for word. These other fellows have told the whole story. He is going to write it up, and they are going to sign it, and it will be used against you in court, both before the grand jury and petit jury. I don't offer you any inducement whatever to make any statement. * * * Now, you can make a statement if you want to and trust to your own luck as to what good it will do you. I am not going to threaten you; I am not going to offer you any inducement at all. If you want to make a statement, you can do it; or you can keep your mouth shut"

—the defendant proceeded to make a statement regarding the crime with which he was charged, and his statement was taken down in writing and signed by him in the presence of an officer, who certified that the defendant swore to the contents of the statement. The defendant objected to this statement being read in evidence, and moved to exclude the same, insisting that a proper predicate had not been laid to show that the statement was voluntary.

[5] Granting the contention that promises had been used to get the defendant to confess, where it appears to the satisfaction of the judge that the influence of these promises are totally done away with before the confession was made, the evidence will be received. 1 Greenl. on Ev. § 220. This principle is recognized in Ward v. State, 50 Ala. 120; Redd v. State, 69 Ala. 225; and Lester v. State, 170 Ala. 38, 54 South. 175.

[6] The court properly admitted evidence of the confession. The purpose of the law is to get at the truth regarding the issues in-

volved, and not to protect a defendant from a confession of guilt, which, after having been voluntarily made, on further consideration he seeks to deny.

[7] Before a witness will be permitted to testify to character he must first declare that he knows the character of the person about whom he is testifying. This the witness White failed to do. The ruling of the court on this question was free from error.

[8] The defendant here complains that the trial judge, after reading to the jury such written charges as he had given to the parties, did not say to the jury:

"These are instructions given you by the court at the request of the defendant and are correct statements of the law to be taken by you in connection with what has already been said to you."

No exception was reserved by the defendant to this omission on the part of the court, and therefore it is not grounds for reversal. However, the omission was cured by written charge A, given at the request of defendant, covering the matter now complained of.

[9, 10] Every fact testified to in this case, connecting the defendant with the commission of the crime, shows that he was a part of the mob, who, in defiance of law and constituted authority, entered the jail in Baldwin county and murdered one of the inmates, whom he, as a deputy sheriff of the county, was under official duty to protect with his life; that, notwithstanding this high duty, he made no protest, nor offered any physical resistance, but his every act was in line with the purposes of the mob, who, in disregard of the law of God and the state, moved in the nighttime, behind masks, to murder its helpless and defenseless victim. His secret and undisclosed motives for being with the mob and a part of it cannot, on his trial for murder, be made the basis of acquittal. Charge AA, attempting to do this, was properly refused; there being no legal evidence in the record to sustain it. Besides, the bill of exceptions does not purport to contain all of the evidence, and, under the repeated rulings of this court, it will be presumed that there was sufficient evidence omitted to justify the trial court in its refusal of the charge.

There is no reversible error in the record, and the judgment is affirmed.

Affirmed.