465 So.2d 443 (1985)
Ex Parte Cornelius SINGLETON.
(Re: Cornelius Singleton, alias
v.
State).
83-1071.
Supreme Court of Alabama.
February 8, 1985.
*444 Michael Scheuermann and Reggie Stephens, Mobile, for petitioner.
Charles A. Graddick, Atty. Gen., and William D. Little, Asst. Atty. Gen., for respondent.

On Application for Rehearing
SHORES, Justice.
This Court's opinion of December 7, 1984, is hereby withdrawn, and the following opinion is substituted in its place.
Cornelius Singleton, the defendant herein, was indicted and convicted for the murder of Sister Ann Hogan while robbing her, in violation of § 13-11-2(a)(2), Ala.Code 1975 (repealed 1981).[1] Defendant's first conviction was reversed and the case remanded for a new trial at 406 So.2d 1024 (Ala.Cr.App.1981), on the authority of Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), on remand, 396 So.2d 645 (Ala.1981); and Ritter v. State, 403 So.2d 154 (Ala.1981), on remand, 403 So.2d 159 (Ala.Cr.App.1981). On remand for a new trial, defendant was again convicted. He was then sentenced to death according to the guidelines set out in Beck v. State, 396 So.2d 645 (Ala.1980). The original sentencing order, issued December 15, 1981, was withdrawn and replaced by an order issued December 22, 1981,[2] which indicated, inter alia, that defendant committed the murder while under a sentence of imprisonment. On February 1, 1983, the Court of Criminal Appeals affirmed the conviction, but ordered a new sentencing hearing. At the new sentencing hearing, the State conceded that defendant had not, in fact, been under a sentence of imprisonment when the crime was committed, which is reflected in the trial court's "Second Amended Sentencing Order."[3] After weighing the aggravating and mitigating circumstances in this case, the trial court again sentenced defendant to death.
The Court of Criminal Appeals affirmed the death sentence in its "On Return to Remand" opinion, dated April 24, 1984, and later overruled defendant's application for rehearing. Defendant then filed a petition for writ of certiorari, which we granted. We affirm.
The facts are set forth in the opinion of the Court of Criminal Appeals in this case.
*445 Defendant contends that the overall facts and circumstances surrounding his confession to the killing of Sister Ann Hogan reveal that it was involuntary and, therefore, not admissible at trial. After considering conflicting evidence on this issue at a suppression hearing out of the presence of the jury, the trial court ruled that the confession was voluntarily and freely made. The full text of the confession was then read into evidence.
Testimony was adduced at the suppression hearing from Sergeant Joe Connick and Sergeant Hubert Bell, both of whom participated in the questioning of the defendant, that no efforts were made by violence, coercion, or intimidation, to induce the defendant to confess, nor was the defendant offered any hope of leniency. Sergeant Connick did admit on cross-examination, however, that he advised the defendant that the crime for which he was being questioned carried a possible penalty of between ten years and life imprisonment. Connick testified that, although he was familiar with the capital statute then in effect, he did not realize the defendant would be charged with capital murder.
Connick and Bell further testified that the defendant was twice advised of his Miranda rights before he made his oral statement. He signed a printed "waiver of rights" form, which was read to him, and, prior to the transcription of the statement into typewritten form, again was given his Miranda warnings. Both Connick and Bell testified that they believed the confession was voluntarily made.
Before the defendant made the oral statement, he was permitted to see his girlfriend, Cathy Barnes, in a room alone for approximately thirty minutes. Ms. Barnes testified that before she went in to see the defendant, Sergeant Bell urged her to "tell him something, because we have got to get this information out of him."
According to Ms. Barnes, while the defendant was being questioned, she was instructed by the district attorney of Mobile County to sit in the defendant's lap. She also testified that during this time the district attorney heavily influenced the content of defendant's statement and that the defendant was not given the opportunity to read the statement, but was merely instructed to sign it.
After a careful review of the conflicting testimony reflected in the record, we find that the trial court did not err in admitting this evidence.
Before a confession is admissible, the trial judge must be satisfied by a preponderance of the evidence that it was voluntarily made. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). This finding will not be disturbed on appeal unless it is evident that the determination was palpably contrary to the weight of the evidence. Smith v. State, 346 So.2d 382 (Ala.Cr.App.), cert. denied, 346 So.2d 385 (Ala.1977); Balentine v. State, 339 So.2d 1063 (Ala.Cr.App.), cert. denied, 339 So.2d 1070 (Ala.1976). Here, although the testimony was conflicting, there is sufficient evidence to support the trial court's conclusion that the confession was voluntarily made.
Defendant also argues that Sergeant Connick's statement that he was being questioned for first degree murder constituted an implied promise that he would not be charged with capital murder. We disagree.
In Womack v. State, 281 Ala. 499, 205 So.2d 579 (1967), a sheriff informed the defendant during questioning that "it would go lighter on him" if he made a statement. Reversing the conviction on the ground that the confession was based on an implied promise of leniency, the Court wrote:
"The rule is clearly settled in Alabama, as elsewhere, that confessions cannot be given in evidence against a person charged with crime, until they are first shown to the satisfaction of the court to have been voluntarily made. Any, the slightest menace or threat, or any hope engendered or encouraged that the prisoner's case will be lightened, meliorated, or more favorably dealt with if he will *446 confess; either of these is enough to exclude the confession thereby superinduced." (Emphasis supplied.)
281 Ala. at 507, 205 So.2d at 587.
In the case at hand, there was no implied promise that defendant's punishment would be meliorated in return for a confession. The defendant was not told he would be charged with first degree murder as opposed to capital murder, nor does the record reflect he was threatened in any way. Sergeant Connick merely stated his opinion, albeit erroneous, that the defendant would be charged with first degree murder. It is evident that there was no inducement in this statement as contemplated by Womack, nor is there any indication that the methods employed by the interrogating officers were calculated to produce an untrustworthy confession.
The defendant next contends that the trial judge committed prejudicial error when he made the following comment to the jury concerning the voluntariness of defendant's confession:
"Do you know yesterday when you werethe jury was out of here for a long period of time? It is incumbent upon the Court first to hear all of the testimony and first the Court must decide that it is a voluntary statement and that it is admissible into evidence. The Court first makes this determination, which I did, and I allowed the confession to be introduced. But, again, I am not the trier of the facts, you are. So, then the burden is upon the State to show you that it was a quote, voluntary statement...."
It is improper for a trial judge to disclose to the jury that he made a preliminary determination that a confession was voluntary and, therefore, admissible. Clifton v. United States, 371 F.2d 354 (D.C. Cir.1966), cert. denied, 386 U.S. 995, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967); United States v. Inman, 352 F.2d 954 (4th Cir. 1965). In the case at hand, however, the trial judge made it clear to the jury that they were to ultimately determine whether the confession was voluntary. We agree, therefore, with the Court of Criminal Appeals that there was no prejudicial error, since the comments of the trial judge "did not imply that the jury should accept and believe appellant's confession based on the trial court's ruling that the statement was voluntary."
Though the comments of the trial judge did not result in prejudicial error, the Court of Criminal Appeals in its opinion in this case incorrectly states the law with respect to the issue of voluntariness.
Relying on Matthews v. State, 55 Ala. 65 (1876), the Court of Criminal Appeals concluded that "[o]nce the trial court has ruled that a confession was voluntarily made and is, therefore, admissible, the jury must accept it as voluntary." Indeed, Matthews v. State supports this conclusion:
"The duty of determining whether a confession is voluntary, rests with the court alone.... When after inquiry, the court determines it admissible, the jury must accept itthey can not reject it because, under the facts, they may deem it involuntary. Their duty is confined to its credibility."
55 Ala. at 71.
Correctly stated, whether a confession was voluntary rests initially with the trial court; once the trial judge makes the preliminary determination that the confession was voluntary, it then becomes admissible into evidence. Thereafter, the jury makes a determination of voluntariness as affecting the weight and credibility to be given the confession. Lewis v. State, 295 Ala. 350, 329 So.2d 599 (1976). Accordingly, the Court in Duncan v. State, 278 Ala. 145, 176 So.2d 840 (1965), wrote:
"We are clear to the conclusion that whenever a motion is made for the question of the voluntariness of the confession to be determined outside the presence of the jury, the motion should be granted. In such a hearing, the trial judge sitting alone should make a determination upon a proper record of the issue of voluntariness.... If the confession is held voluntary and admitted, *447 the jury's consideration of that confession and surrounding circumstances shall proceed in accordance with the `Orthodox' procedure, that is, the jury considers the voluntariness as affecting the weight or credibility of the confession." (Emphasis added.)
278 Ala. at 165, 176 So.2d at 859.
Matthews v. State, supra, insofar as it stands for the proposition that the trial judge's preliminary determination of voluntariness is conclusive on the jury, is in conflict with established precedent in this jurisdiction and is hereby expressly overruled.
Defendant's remaining contentions were fully and correctly decided by the Court of Criminal Appeals and need not be further considered here.
We adhere to the views expressed by this Court in Ex parte Baldwin, 456 So.2d 129 (Ala.1984), on the constitutionality of the sentencing phase of these cases. However, in view of the decision of the Eleventh Circuit Court of Appeals in Ritter v. Smith, 726 F.2d 1505 (11th Cir.), cert. denied, ___ U.S. ____, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984), which is controlling authority on the federal district courts in Alabama, it is appropriate to discuss certain aspects of the sentencing procedures employed in this case.
The Eleventh Circuit, in Ritter, vacated the death sentence of Wayne Eugene Ritter and remanded for a new sentencing hearing. Ritter was convicted of capital murder in 1977 under § 13-11-2(a), Ala. Code 1975 (repealed 1981),[4] wherein the jury was instructed that the death sentence would automatically be imposed upon a finding of guilt of the capital offense.
The Eleventh Circuit held that "the jury's mandatory death sentence is a factor in the sentencing process which must meet the constitutional standards established in Furman to be permissible. This is a test the mandatory death sentence factor clearly does not meet." The Court went on to write:
"We further find that the constitutionally impermissible factor of the jury's mandatory death sentence infects the trial judge's sentencing determination. Although a separate sentencing hearing is held by the trial judge, at which evidence of aggravating and mitigating factors is introduced, the statute requires that in making the determination whether to impose the death sentence after reviewing this evidence the judge must decide whether he will `[r]efuse to accept the death penalty as fixed by the jury.' Ala. Code § 13-11-4 (1975) (repealed 1981). Moreover, the statute requires the judge to weigh the mandatory death sentence factor in the balance with his consideration of aggravating and mitigating circumstances in deciding to impose the death penalty. Id. Thus, the constitutionally impermissible factor of the jury's mandatory death sentence must be given weight in the judge's own sentencing decision."
726 F.2d at 1516.
In the case at hand, the defendant was tried according to the procedures set forth in Beck v. State, 396 So.2d 645 (Ala. 1981), which mandated a separation of the guilt-finding phase from the sentencing phase in a capital case. Here, the jury was instructed that upon returning a verdict of guilt of the capital offense,[5] they would later sentence the defendant to either life imprisonment or death. The jury found the defendant guilty and, after a proceeding in which they heard evidence of mitigating and aggravating circumstances, recommended a sentence of death. Since the factor which the 11th Circuit considered rendered the proceeding constitutionally infirm, a mandatory death sentence by the jury, was not present in the trial judge's *448 sentencing determination, we decline to remand for a new sentencing hearing.
We are aware that the Supreme Court of the United States has now granted certiorari in Baldwin after the original opinion in this case was released. By acquiescing in the 11th Circuit's opinion in Ritter, we did not intend to indicate that we agreed with it. It was our purpose to follow it only because not to do so would result in every case in which the issue is involved (and we judicially know there are several pending) being brought before the federal courts on petitions for writs of habeas corpus, and we recognize that the federal district courts are bound to follow Ritter. If a new sentence hearing is required and will be granted as a matter of course in the federal court, it would be an unnecessary waste of time for this Court not to order a new hearing. However, that is not required in this case for the reasons stated above.
APPLICATION FOR REHEARING OVERRULED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, ALMON, EMBRY, BEATTY and ADAMS, JJ., concur.
JONES, J., concurs in the result.
JONES, Justice (concurring in the result).
I concur in the result. See Ritter v. State, 414 So.2d 452 (Ala.1981) (Maddox, Jones, and Adams, JJ., concurring in part and dissenting in part).
NOTES
[1] Section 13-11-2 was repealed by Ala. Acts 1981, No. 81-178, effective July 1, 1981. That section remained effective, however, for conduct committed prior to July 1, 1981. See "Code Commissioner's note" to § 13-A-5-31, "1982 Cum.Supp. to 1977 Blue Paperback Pamphlet."
[2] See Appendix A to the opinion of the Court of Criminal Appeals, dated February 1, 1983.
[3] See Appendix to the Court of Criminal Appeals' "On Return to Remand" opinion of April 24, 1984.
[4] See fn. 1.
[5] The jury was also instructed on the lesser included offenses of murder in the first degree, murder in the second degree, manslaughter in the first degree, and robbery. Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).