# Porter *v.* The State.

*Indictment for Murder.*

1. *Admissibility of confessions.*—Although no unbending, universal rule can be laid down, by which to determine whether subsequent confessions in a criminal case are admissible, when the former confessions were obtained by improper influences; yet, in each case, the inquiry must be, whether, considering the degree of intelligence of the prisoner, and all the attendant circumstances, it is affirmatively shown that the effect of the primary improper inducement was so entirely obliterated from his mind that the subsequent confession could not have been in the slightest degree influenced by it ; and if there be any doubt on this queston, it must be resolved in favor of the prisoner, and the confession must be excluded.

2. *Same.*—The first confessions of the prisoner in this case, who was a freedman, were made during his preliminary examination before a magistrate on a charge of murder, and were obtained from him, after a great deal of hesitation on his part, by the strongest assurances on the part of his attorney, confirmed by the prosecuting attorney, the brother of the deceased, and the magistrate, that he should not be prosecuted, but should be used as a witness against the other defendants; and these confessions were repeated by him, on the next day, to the constable who was carrying him to jail, and who had given him three drinks of liquor. On the first and second days after his commitment to jail, the leading counsel for the prosecution, accompanied by a brother-in-law of the deceased and another friend, visited him in jail, and said to him, no other persons being present: " I have heard what you confessed at U. You did not tell the whole truth about it. I want you to be particular how you talk, as what you say may send you to the penitentiary or gallows. I have control of the case now, and all that was done at U. is done away. I withdraw all hopes of reward, and fears of punishment. You have not told all the truth about it. I tell you now, again, that you must not hope or expect to receive any benefit, favor, or mercy, or think the case will go lighter with you for what you said at U., or what you may say now; and if they promised to let you off, or to make the punishment lighter, or to let you be a State witness, I tell you, it cannot be. You cannot be a State witness, and you must not expect any mercy, or to be a State witness. I want you to understand, that all promises made at U. are taken back, and what you said there will do you no good, and cannot be used for or against you. If you wish to tell anything, you must do it of your own free will; and remember, it may hang you, or send you to the penitentiary for life. Now, you can tell the truth about it, if you wish. Do you understand what I mean ?" The prisoner replied, "that he did understand; that he did not expect any mercy; that he expected to be hung; that he told it because his conscience hurt him, and he could not keep it any longer;" and he then made confessions substantially the same as the former. *Held*, that these last confessions ought not to have been received in evidence against him.

[Porter v. The State.]

3. *Charge as to credibility of witness impeached or contradicted.*—A charge asked in a criminal case, in these words: "The testimony of a witness for the prosecution, who is shown to be unworthy of credit, is not sufficient to justify a conviction, without corroborating evidence; and such corroborating evidence, to avail anything, must be a fact tending to show the guilt of the defendant,"—asserts a correct legal-proposition.[*]

4. *Effect of confesssions, as against co-defendants.*—Where several defendants are jointly indicted and tried, the confessions of one are not admissible against another, for any purpose; consequently, where some of them have made confessions, and others have not, it is error to instruct the jury that they "may compare the confessions of each with the other."

5. *Alibi; unsuccessful attempt to prove.*—An unsuccessful attempt to prove an *alibi* does not "create a strong presumption against the prisoner," though, like an unsuccessful attempt to prove any other material fact in defense, it is a circumstance to be weighed against him; and a fraudulent attempt to prove a simulated *alibi*, sustained by perjury, will, if detected, be a circumstance of great weight against him.

FROM the Circuit Court of Perry.

Tried before the Hon. GEO. H CRAIG.

The defendant in this case, Lucius Porter, a freedman, was indicted and tried, jointly with three other freedmen, Albert Young, Silas Smith, and Robert Jones, for the murder of Isaac D. Moore; was convicted of murder in the first degree, and sentenced to death, while there was a mistrial as to the other defendants.  A bill of exceptions was reserved as to numerous rulings of the court on the trial, containing over sixty pages of record paper; but the opinion of this court renders it unnecessary to copy this at length, or even to state the substance of it.  The deceased was shot and killed, on the night of the 4th November, 1876, on his return from Uniontown, to his residence, about six miles distant in the country, while his servant and driver, who had got out of the buggy, was attempting to open the outside gate of his plantation; and the proof showed that the shooting was done by some person or persons who were lying in ambush for that purpose.  The principal question in the case, as here presented, relates to the admissibility of certain confessions made by the defendant Porter; and the opinion states all the material facts connected with these confessions. There was also some proof of confessions made by the defendant Young, which were admitted by the court below without objection, and which require no special notice. The defendants introduced twenty-four witnesses, "all of whom were colored persons, and were related to the defendants, or lived with or near them, and who testified to facts which, if true, would establish an *alibi* for each of said defendants; and whose statements did not agree, but differed in a great many particulars."

---

[*] This decision affirms the principle stated in the case of *Cohen v. The State,* and overrules the case of *William Ray v. The State* on the same point, as shown by the reports of those cases in 50 Ala. 104–112.

The court charged the jury, in writing, as follows:

"The defendants are charged with the murder of Isaac D. Moore. In order to convict, it is necessary for the State to show to your satisfaction, beyond a reasonable doubt, that the defendants, with malice aforethought, took the life of said Isaac D. Moore, by shooting him with a gun; and that this was done in the county of Perry, and before the finding of this indictment. It is admitted that said Moore was killed, in said county, before the finding of the indictment, and that the person or persons who killed him would be guilty of murder in the first degree. Therefore, the only question for you to settle is, whether the defendants are the persons who committed the deed. If you are satisfied from the evidence, that one of them murdered said Moore by shooting him with a gun, then, under the admission above named, he would be guilty of murder in the first degree; but, before you can convict the others, you must be satisfied from the evidence, beyond a reasonable doubt, that they had, before the killing, entered into a conspiracy with the person who committed the deed, to take the life of said Moore. If the evidence satisfies you that one of them committed the deed, and if you are further satisfied that, before and at the time of the killing, there was a community of design—a purpose framed—an understanding had—between him and the other defendants, to take the life of said Moore, then they would be just as guilty as he who fired the fatal shot. If several persons conspire to do an unlawful act—an act bad in itself—all the members of such illegal combination are responsible for the acts of each, done in the prosecution of their common purpose. If two or more persons conspire to rob another, and, in the prosecution of this common design, one makes the attempt, and kills the person in carrying it out, then all of them would be guilty of murder, although only one was present, and did the killing. A conspiracy is seldom proved expressly. The evidence in proof of it is almost always circumstantial. If it be proved that the persons who are supposed to have conspired were intimate with each other, and held private consultations, and pursued by their acts the same object, one of them performing one part, and another performing another part, so as to complete it, and with a view to the attainment of that same object,—then the jury would be justified in the conclusion, that they were engaged in a conspiracy to effect that object. A person's acts may be considered by the jury, in order to ascertain what his intentions are.

"But the defendants all say, that you should not convict them, because they say they have shown that they could not

(8)

have committed the offense, because they say they were not at or near the place of the killing, but were elsewhere. If they have satisfactorily shown this by the evidence which has been adduced before you, then, of course, you cannot convict them; for, when an *alibi* is satisfactorily established, it is as good as any other defense. . *But the jury should look to the evidence establishing the alibi with great caution,; not with suspicion, but with care and caution; and if a defendant attempts to prove an alibi, and fails in it, then such failure is a strong presumption against him.*

" The defendants further say, that the State has not shown any motive or incentive on their part to commit the crime. Now, gentlemen, look to all the evidence, and ascertain if there was existing, between the defendants and the deceased, such a feeling as could move them to the commission of the offense. Had there been difficulties between them prior to the killing? and, if so, does the evidence show that the bad feeling engendered by such difficulties existed at the time of the killing? If so, was it such as would move them to the commission of the deed? If not, does the evidence show that a desire to obtain money at the time was such as would induce, and, if so, do you believe that one or both did induce the deed, or would, under all the circumstances, prompt the defendants to commit the deed? If not, was there anything else that would have moved them to commit this crime? and if so, what? And if there was no motive for the commission of the crime, did they commit it? and if so, why? It is your duty to look to all the evidence, to all the circumstances surrounding the parties, and what they said and did, in order to ascertain the incentive to the commission of the deed by these defendants; and if it does not satisfy you of their guilt, beyond a reasonable doubt, you should acquit; but, if the evidence shows their guilt beyond a reasonable doubt, it is your duty to return a verdict of guilty.

" The confessions of the defendant should be received with great caution, and examined and weighed by the jury with great care. It is for the jury to say, whether the person making the confession speaks the truth, or not. The court has permitted the confessions in this case to go before you, and you are to pass upon their sufficiency and credibility. You cannot look to the confessions of one defendant, as against the others; and you should be careful to remember this, in considering the confessions. But it is your duty to look to all the other testimony in the case, in order to ascertain whether or not these confessions are true; *and you may compare the confessions of each with the other*, and of all with the evidence in the case, and ascertain if the facts and cir-

[Porter v. The State.]

cumstances attending the killing, or facts to the discovery of which the confessions led, or facts having a just tendency to lead to the conclusion that the defendants committed the offense, corroborate such confessions.

" The State claims that the guilt of the defendants is clearly shown, not only by positive proof, but by the circumstantial evidence before you. By circumstantial, or presumptive proof, is meant that measure and degree of circumstantial evidence which is sufficient to produce in the minds of the jury conviction beyond a reasonable doubt of the truth of the fact in question. *Circumstantial evidence is capable of producing the highest degree of moral certainty in the application.* It is, however, a species of evidence which requires the utmost degree of caution and vigilance in its application; and in no case, and upon no principle, can the policy of preventing crime, and protecting society, warrant any inference, which is not founded on the fullest and most certain conviction of the truth of the fact, independently of the nature of the offense, and of all extrinsic considerations whatsoever. You cannot convict, unless you are satisfied by the evidence, to a moral certainty, that the defendants are guilty; and if there is any other reasonable hypothesis, save that of the defendants' guilt, then you should acquit. But, if, after a careful consideration of all the evidence, you have no reasonable doubt of their guilt, then you will have arrived at that moral certainty which would warrant a conviction. The fact that the evidence leading to such a conclusion is circumstantial, should not prevent a verdict in conformity therewith. It is your duty to weigh carefully all the testimony in the case; and if you can make it consist with the truth, to do so. You cannot set aside the testimony of any witness capriciously; that is, you cannot disbelieve a witness, or set aside his testimony, without a good reason for so doing. But, if, from the appearance of a witness on the stand, or his manner of testifying, you think him unworthy of belief, you may set aside his testimony entirely, and not consider it in making up your verdict. In so doing, however, you should be careful, and be sure you have good reason for so doing."

The defendants severally excepted to this entire charge, and to each portion of it, and particularly to the parts which are italicized; and they then requested the following charges, which were in writing :

"1. The circumstances attending the killing of the deceased must be connected with Silas Smith by at least one creditable witness, before the jury can convict him.

2. The testimony of a witness for the prosecution, who is shown to be unworthy of credit, is not sufficient to justify a

conviction, without corroborating evidence; and such corroborating evidence, to avail anything, must be of a fact tending to show the guilt of one or all of the defendants.

"3. If the jury believe from the testimony, that one of the tracks found near the place of the killing had a deeper indentation in the ground on one side of the heel, and the State has not shown that a shoe or boot was worn by one of the defendants, and has not explained to the court and jury why such proof has not been made; then the presumption is, that such proof could not be made, and that said indentation was not made by a boot or shoe worn by any of the defendants, and that said track was not the track of either of them.

"4. If the jury believe that Phil Henry" [a witness for the prosecution, who testified that, in the morning of the day on which the deceased was killed, he overheard a conversation between the several defendants, in which they declared their intention to meet the deceased that night and kill him] "is unworthy of belief, and his statements are not corroborated by any evidence tending to show the guilt of Silas Smith and Bob Jones, or either of them, they must acquit them.

"5. The jury cannot consider the confessions of Porter and Albert Young, to corroborate the testimony of Phil Henry against Silas Smith and Bob Jones.

"6. The jury must pass upon the guilt or innocence of each one of the defendants; and in considering the case of Silas Smith and Bob Jones, they must totally exclude from their minds the confessions said to have been made by the other defendants; and if they are not satisfied beyond all reasonable doubt, and to a moral certainty, outside of such confessions, that the said Silas Smith and Bob Jones are guilty, they must acquit them.

"7. In permitting confessions to go to the jury, the court determines that they were voluntary, but not that they were deliberate, and not that they are to be believed by the jury.

"8. When the prosecuting attorney read to the jury an extract from Burrill's Law of Circumstantial Evidence, he was reading what the author thought on the question of an *alibi*; but what the counsel read from that book, is not the law of this case, and does not control or govern the jury, who must take the law from the court, and not from any of the attorneys in the case."

The court refused each of these charges, and the defendants severally excepted to their refusal.

W. B. MODAWELL, for the defendant.

JNO. W. A. SANFORD, Attorney-General, and CHAS. G. BROWNE, for the State.

STONE, J.—"A free and voluntary confession of guilt, made by a prisoner, whether in the course of conversation with private individuals, or under examination before a magistrate, is admissible in evidence, as the highest and most satisfactory proof; because it is fairly presumed, that no man would make such a confession against himself, if the facts confessed were not true. And the highest authorities have now established, that a confession, if duly made, and satisfactorily proved, is sufficient alone to warrant a conviction, without any corroborating evidence *aliunde*. But a confession, in order to be admissible, must be free and voluntary : that is, must not be extracted by *any sort* of threats, or violence, nor obtained by *any* direct or implied promises, however slight, nor by the exertion of any improper influence." 2 Russ. Cr. 824. What we have here said is quotation. It is not our intention to overturn or impair the principle declared in *Matthews v. The State*, at the present term, in which we held that a conviction cannot be had on confessions alone, without some other proof of the *corpus delicti*. In that case, as in this, the crime charged was a felony.

"When a confession has been obtained, or inducement held out, under circumstances which would render a confession inadmissible, a confession subsequently made is not admissible in evidence, unless, from proper warning of the consequences, or from other circumstances, there is reason to presume that the hope or fear, which influenced the first confession, is dispelled. And in the absence of any such circumstances, the influence of the motives proved to have been offered will be presumed to continue, and to have produced the confession, unless the contrary is shown by clear evidence; and the confession will be rejected. 2 Leading Cr. Cases, 213.

In *Brister v. The State*, speaking on the subject of confessions, this court rightly said : "Where promises or threats have been used, yet, if it appear to the satisfaction of the judge that *their influence was totally done away* before the confession was made, the evidence will be received." 26 Ala. 107, 129; See, also, *Aiken v State*, 35 Ala. 399.

In 1 Greenl. Ev. § 221, it is said : "The influence of the motives proved to have been offered will be presumed to continue, and to have produced the confession, unless the contrary is shown by clear evidence, and the confession will therefore be rejected."

In 2 Russell on Crimes, 833, quoting from adjudged cases,

is the following language : "A confession had been improperly obtained, by giving the prisoner two glasses of gin ; the officer to whom it had been made, read it over to the prisoner, before the committing magistrate, who told the prisoner, the offense imputed to him affected his life, and a confession might do him harm. The prisoner said, that what had been read to him was the truth, and signed the paper. Best, J., considered the second confession, as well as the first, inadmissible ; and said, that had the magistrate known the officer had given the prisoner gin, he would, no doubt, have told the prisoner, that what he had already said could not be given in evidence against him, and that it was for him to consider whether he would make a second confession. If the prisoner had been told this, what he afterwards said would be evidence against him ; but, for want of this information, he might think that he could not make his case worse than he had already made it, and under this impression might sign the confession before the magistrate. Where hopes of favor had been given, and the prisoner refused, before the magistrate, to confess, except upon conditions, Mr. J. Buller observed, that there must be very strong evidence of an explicit warning by the magistrate, not to rely on any expected favor on that account, and it ought most clearly to appear that the prisoner thoroughly understood such warning, before his subsequent confession could be given in evidence." See, also, 2 Lead. Cr. Cases, 213.

In *People v. Robertson* (1 Wheeler's Cr. Cases, 67), the magistrate told the prisoner's wife, that if what she had told him was true, her husband had better confess. He held out no inducement to fear or favor, other than was implied in these words. The prisoner was then in custody, but not in the room in which the magistrate used these words. The wife then asked the witness, "Can we put confidence in him ?" Witness said, "You may confide in the magistrate." On the next morning, the same magistrate took the examination of the prisoner, and told him, that nothing he had said before should induce him to expect any favor ; but that he (the magistrate) had all the facts, and it would be better to tell them truly, for, if he did not, he would detect him in a falsehood. He then examined him, in the usual manner. The court held, that the confession was, under these circumstances, inadmissible—that this was holding out an expectation of favor, inconsistent with the free and voluntary spirit in which a confession should be made. See the subject of confessions fully treated in 2 Leading Criminal Cases, 167 to 232.

In *Bonner v. The State*, at the present term, we, to some

[Porter v. The State.]

extent, considered the question of confessions, and, among other things, said, a reasonable doubt entertained by the court, as to whether a confession was voluntarily made, or not, ought to be resolved in favor of the accused.

In the present case, there is no material conflict in the evidence which proves the circumstances under which the confessions were made. Hence, this record presents no question of the weighing of evidence. The facts appear to be clearly made out, and are substantially as follows: The prisoner, Porter, was undergoing preliminary trial before a magistrate, on a charge of murdering Isaac D. Moore. Mr. Moore had been the victim of a most atrocious murder, committed, probably, for purposes of robbery, in the night time, and by one or more persons who were lying in wait for the purpose. The State and the prisoner were each represented by counsel. The gentleman who acted as the prisoner's counsel testified as follows: "Believing. from the evidence in the case, and the manner of the defendant, Porter, that he was guilty, and feeling that the only way to save his life was to get him as a State witness, I proposed to Mr. Stewart" [counsel for prosecution], "to make him a State witness, if he would confess and tell the truth. Mr. Stewart at first declined, wishing to confer with Mr. Brown and Mr. W. D. Moore, the brother of deceased. I told him, that I felt convinced that Porter knew all about it; and Mr. Stewart, after consulting with Mr. Moore, at last agreed to the proposition. Porter was sober and collected all the time; and I took Porter out of the court room, and into a private room, and stated to him, that if he would confess, and tell me all about the matter, and all the truth about the murder of Isaac D. Moore, I assured him that he should not be hurt; that he should not be tried for the offense—that he should be discharged, and used as a witness against the other defendants. I told him, I was authorized by Mr. Stewart, and the other parties engaged in prosecuting him, to say this to him, and to make this bargain and agreement; I can have it strictly carried out, and I will see that it is strictly carried out." (This occurred at Uniontown.) "The prisoner refused to tell anything about the murder, saying that he did not know anything about it. I then told him, he had just as well tell it; for they had sufficient proof against them all to hang them, and that the only way he could escape was to confess and tell the truth about it, and become a State's witness in the cause. The prisoner then asked me, if I could save him, if he would confess. I replied, that I could and would save him from punishment, and that I would suffer my right arm to be cut off before he should be punished, if he would con-

fess and tell me all about it. The prisoner then said, 'Let Mr. Moore,' the brother of the deceased, 'come and tell me that I will not be punished, if I tell it.' I brought in Mr. Moore, Mr. Nicholson, the magistrate, and Mr. Stewart, the prosecuting attorney; and they all assured the prisoner, that he should not be punished, if he would confess and tell all about it. And I then gave him every inducement to tell, and every assurance that he should not be punished, but used as a State witness, if he would tell the facts about the homicide." After some hesitation, the prisoner said, "There is no chance for me, any how; I will be hung, whether I tell or not, and I might as well tell all about it." He then confessed before those persons. It was then and there agreed, that he should be made a State witness; and he went before the magistrate, in the court-room, and repeated the statement and confession. The next day, while being carried to prison by the constable, and after receiving three drinks of liquor from him, he repeated his confession to him.

On the first and second days, each, after the prisoner was committed to prison at Marion, the leading counsel for the prosecution visited the prisoner in jail, there being in company with said counsel, on each occasion, two other persons, friends of the prosecution; one of them, at least, being present at the request of said counsel. At the first of said visits, the brother of the deceased was present; and the brother-in-law of deceased was one of the number who then visited the prisoner. Said leading counsel said to the prisoner, in substance, as follows: "I have heard what you confessed at Uniontown. You did not tell the whole truth about it. I want you to be particular how you talk, as what you say may send you to the penitentiary or gallows. I have control of the case now; and all that was done at Uniontown is done away. I withdraw all hopes of reward, and fears of punishment. You have not told all the truth about it. I tell you now, again, Porter, that you must not hope or expect to receive any benefit, favor, or mercy, or think the case will go lighter with you, for what you said at Uniontown, or what you said at any time before, or what you may say now; and if they promised to let you off, or make the punishment lighter, or to let you be a State witness, I tell you it cannot be. You cannot be a State witness; and you must not expect any mercy, or to be a State witness. I want you to understand, that all promises made at Uniontown are taken back, and what you said at Uniontown will do you no good, and cannot be used for or against you. If you wish to tell any thing, you must do it of your own free will; and remember, it may hang you, or send you to the penitentiary for life.

[Porter v. The State.]

Now, you can tell the truth about it, if you wish. Do you understand what I mean?" The prisoner replied, "that he did; that he did not expect any mercy; that he expected to be hung; that he told it, because his conscience hurt him, and he could not keep it any longer." The prisoner thereupon made confession of his guilt; and the main question in this cause is, were those confessions, last made, rightly admitted in evidence against him?

1. We do not think any unbending, universal rule can be laid down, for the government of all cases, in which it is claimed that confessions are legalized by the withdrawal of promises or threats previously made. The inquiry, in all such cases, presents itself, has all influence been withdrawn and obliberated from the mind of the prisoner, so as to show, affirmatively, that the confession is clearly voluntary, and not influenced in the slightest degree by the threats, promises, or other inducements, previously made or held out, or by any thing which resulted from such previous threats or promises. For, if such previous inducements were the remote or contributory cause of the confession, the policy of the law forbids that such confession shall be used in evidence; and when previous inducements have resulted in drawing a confession, the proof should be very clear and strong, that the mind of the prisoner had been completely disabused, so as to convince the court that the confession was as free as if no motives to make it had ever been offered to the prisoner. Less than this falls short of proving that the confession was voluntary. In considering the facts of each particular case, the degree of intelligence of the prisoner should be taken into the count.

2. In the present case, the strongest conceivable influences were brought to bear on the prisoner, to induce him to confess. The promises were of the most complete immunity from criminal punishment; and this guaranty was given and sanctioned by the court before which he was being tried, the brother of the deceased, and by the officiating attorneys of both the prosecution and the defense. Never was importunity more vehemently urged, backed by a stronger array of personal influence, or enforced by the promise of a more tempting boon. A clear head and an imperious will could scarcely resist such combined influences. Under these the first confession was made, and it matters not that the prisoner then announced he expected to be hung; thus repelling, as it may be supposed, all idea that he was at all influenced to make the confession by the promises previously made him. It is very improbable that, in the absence of the importunities and assurances with which he was besieged, he

would have confessed his guilt of the horrid crime, the commission of which was then so justly disturbing the public repose. In fact, the counsel for the prosecution, in view of the circumstances, admitted on the trial that the confession, then and thus obtained, could not be given in evidence against the prisoner. In this he but affirmed what all the law books teach.

The second confession, made on the day following, the counsel for the prosecution also admitted was illegal evidence. In this he asserted only a legal truism, for two reasons; first, the inducements of the day before had not been withdrawn; and, second, the confession was made to the officer who had him in charge, and who, previous to the confession, had given the prisoner three drinks of liquor. It is thus shown that, up to the time the prisoner was committed to jail, none of his confessions were admissible evidence against him.

Were the explanation and withdrawal of the offered inducements, which took place when the prosecuting counsel visited the prison, sufficient to efface from the mind of the prisoner every trace of influence exerted by the promises made, so as to leave his mind as free to act, as if no hopes or expectations of benefit had been previously held out to him? Are we convinced—fully convinced—that such was the case? The recitals in this record do not enable us to answer these questions affirmatively. The prisoner was evidently an ignorant man. He was confronted only by persons who believed him guilty, and could not be classed as his friends. Neither his counsel, nor any sympathizing friend, was present; and he was not warned or advised to reflect, or take counsel, before he made further confession. We do not say that this last step would be in all cases necessary; but, in the then condition of the prisoner's mind, and with the persons then around him, it would have been eminently humane and proper to do so. Above all, we do not think it was sufficiently explained to the prisoner, ignorant of such things, as we are satisfied he was, that none of the confessions previously made by him could be proved in court against him, or could exert any influence whatever in his trial. This point should have been made unmistakably plain to him. Less than this does not assure us that the prisoner may not have believed his former confessions had sealed his doom, and that any denial he might then make would be of no avail.

In what we have said, we do not wish to be understood as disapproving confessions of guilt, *voluntarily* made, as an instrument of evidence. When they are the spontaneous

out-crop of conscious guilt, made without importunity, without appliances of hope or fear, if satisfactorily proved, they deserve to be classed with the highest evidence. No sane man, it is supposed, would deliberately and falsely volunteer a confession of his guilt, and thereby bring odium and probable punishment upon himself. Consequently, when a confession is freely and spontaneously made, it is an evidence that the virtuous instincts are not all deadened, and that conscience is doing its accustomed work. A self-accusing secret is a restless prisoner. It struggles for enlargement. When, however, appliances and artifices are resorted to, as a means of inducing suspected persons to confess, such confessions come in so questionable a shape, that they deserve very careful, watchful scrutiny. The doctrine of admitting confessions in evidence, has been sometimes carried to the outer verge of propriety. *King v. The State*, 40 Ala. 314.

3–4. Many of the charges given and refused do not bear on the question of Porter's guilt. They are only important as bearing on the guilt of other defendants. Of the charges asked and refused, several are of this class. Charges numbers 2, 5 and 6 assert correct legal propositions, and should each have been given. Charges 1, 4 and 7 were calculated to mislead, and should not have been given. The clause in the general charge, authorizing the jury "to compare the confessions of each with the other," was calculated to mislead, and should not have been given, without a limitation. Parties were on trial, against whom no confessions were proved. Against such, neither the confessions of others, nor a comparison of the confessions one with another, should be allowed to have the slightest influence. As to them, such confessions were but unsworn hearsay; and should have been allowed to exert no more influence against them, than if the parties confessing had not been on trial.

5. An attempt made to prove any material fact, followed by a failure, is a circumstance to be weighed against the party making it. To say "it is a strong presumption against him," is going beyond what any authority justifies. 1 Burrill's Cir. Ev. 519, quoting from Wills' Cir. Ev. 83, says, such failure "is always a circumstance of great weight against a prisoner." "Great weight" is not the equivalent of "strong presumption." Presumptions in law are inferential, or *prima facie* facts. We are inclined to think Mr. Burrill states the principle too strongly. We cannot perceive why a failure, in an attempted proof of *alibi*, should be visited with severer intendments, than a failure in the attempt to prove any other fact in defense. Of course, a fraudulent

[Beggs v. The State.]

attempt to prove a simulated *alibi*, sustained by perjury, will, when detected, be a circumstance of great weight against the prisoner. The connection in which Burrill employs the expression above copied, tends to show that he had reference to an unsuccessful fraudulent attempt to establish an *alibi*. In that sense, we agree with him.

The judgment is reversed, and the cause remanded. Let the prisoner remain in custody, until discharged by due course of law.