# CASES

# SUPREME COURT OF ALABAMA

## NOVEMBER TERM, 1895.

---

## Wilson v. The State.

### *Indictment for Murder.*

1. *Evidence; admissibility of statements by accused; coroner's inquest.* On a trial for murder, the statements made by the defendant on his examination at the coroner's inquest, at which time he was neither under arrest nor accused of the crime, are admissible in evidence; and the fact that such statements were made under oath, does not render them involuntary and inadmissible. (BRICKELL, C. J., dissenting.)

2. *Same; evidence tending to show feeling towards the deceased.*—On a trial under an indictment charging the defendant with the murder of J., a police officer, evidence that some time about three weeks prior to the homicide, while the defendant and others were standing together, one of his companions said to him, "Look out! J is near," to which the defendant, replied "That d—d little J had better not bother me," is admissible as tending to show the *animus* of the defendant towards the deceased; the weight of such evidence being for the consideration of the jury.

APPEAL from the Circuit Court of Russell.

Tried before the Hon. J. M. CARMICHAEL.

The appellant was indicted and tried for the murder of Ed Jackson, was convicted of murder in the second degree, and sentenced to the penitentiary for twenty years.

Upon the trial of the cause, as is shown by the bill of exceptions, the State introduced evidence tending to show that the defendant had killed the deceased, Ed Jackson, by shooting him with a pistol.

Only two rulings of the trial court are brought before this court for review, which are based upon exceptions

reserved to the rulings of the trial court upon the evidence. The facts relating to the admission in evidence of the testimony of the defendant on his examination before the coroner, are sufficiently stated in the opinion.

The State introduced one Vickery, as a witness, who testified that about three weeks before the killing, the defendant and three other persons were standing together about 15 feet from the witness's storehouse in the town of Girard, one night, and witness heard one of the persons who was with the defendant say: "Lookout Wilson, Jackson is near." (Jackson was a policeman of the town of Girard.) Witness then testified that he heard the defendant reply: "That damned little Jackson had better not bother me." The defendant moved the court to exclude the testimony of the witness as to what the defendant had said, upon the ground that it was merely hypothetical and was not a threat, and, uttered under the circumstances as described by the witness, did not tend to show a state of feeling between the parties. The court overruled this motion, admitted the testimony, and to this ruling the defendant duly excepted.

No counsel marked as appearing for appellant.

WILLIAM C. FITTS, Attorney-General, for the State.

BRICKELL, C. J.—The defendant was convicted of murder in the second degree for the killing of one Ed Jackson, and was sentenced to imprisonment in the penitentiary for a term of twenty years. The case comes before this court on exceptions taken on the trial to the admission of evidence.

The killing was in the city of Girard, about 12 o'clock at night. On the next day a justice of the peace, acting in the capacity of coroner, proceeding according to the statute, held an inquest to ascertain if the deceased came to his death by the unlawful act of another, and if such was the fact, who was the guilty agent. With others, the defendant was examined as a witness before the jury of inquest, and testified to his proximity to the place of killing at the time of its occurrence; that he then had a pistol; and to the declaration of the deceased that George Wilson shot him. The examination was reduced to writing and subscribed by the defendant, and its ad-

[Wilson v. The State ]

mission in evidence against him on the trial, is the
matter of the first exception.

Though it is apparent that the defendant must at the
time of the examination have been suspected, and must
have known he was suspected of having perpetrated, or
of participation in the perpetration of the homicide, he
was not, so far as is shown by the bill of exceptions,
under arrest; nor had any accusation in form of law
been preferred against him. The case has not been
argued by counsel, and we suppose the point of objection
to the admissibility of the examination is, that regarding
the situation of the appellant, it was not voluntary—
that it was under the duress of an oath in the course of
a judicial proceeding, the particular object of which was
to ascertain whether a criminal homicide had been com-
mitted, and by whom it was committed.

In the absence of the coroner from the county, or in
the event of his inability to act, a justice of the peace
has the authority to hold the inquest on the body of a
deceased person, it is the duty of the coroner to hold,
and in this respect, has all the powers of the coroner.
It is the duty of the coroner, when there is reasonable
ground to believe that death has been caused by the un-
lawful act of another, to summon a jury to inquire into
the cause of the death. If, after an inspection of the
body, and the hearing of evidence, the jury are satisfied
that death was the result of unlawful means, or of the
unlawful act of another, they must render a verdict set-
ting forth who the deceased was, and the means or man-
ner of death; and if discovered, by whose act death was
produced. Upon the rendition of the verdict, it is the
duty of the coroner to issue a warrant for the arrest of
such person. The attendance of witnesses before the
jury may be compelled; and it is the duty of the coroner
"to summon and examine as a witness any person, who,
in his opinion, or that of any of the jury, has any
knowledge of the facts." A witness refusing "to an-
swer any questions in relation to the cause of such death,
except on the ground that it may criminate himself, is
guilty of a misdemeanor;" and on conviction, is subject
to a fine of not less than two hundred nor more than five
hundred dollars, and may be imprisoned not exceeding
three months.—Cr. Code, §§ 4801–4814.

The recital of the bill of exceptions is, that the de-

[Wilson v. The State ]

fendant with other witnesses was *called* before the coroner and jury and examined. The recital admits of no other interpretation than that the examination was involuntary; in obedience to the summons or command of the coroner. It is incapable of being interpreted as an examination of the defendant at his own request, and as a witness, in pursuance of the statute.— Cr. Code, § 4473.

It seems to have been an unsettled question in England, the decisions varying, whether if a person accused or suspected, had been examined before the coroner touching the crime, his deposition or examination could be given in evidence against him, on a subsequent trial for the commission of the crime. The more recent authorities seem to have settled, that such deposition or examination is admissible, especially if the accused was properly cautioned by the coroner.—1 Roscoe Cr. Ev. (8th ed.) 95; *R. v. Owen*, 9 Carr. & P. 83; *R. v. Colmer*, 9 Cox C. C. 506; *R. v. Wiggins*, 10 Cox C. C. 562. In 1 Greenl. Ev. (15th ed.) §225, n. a., it is said: "The rule in the United States seems to be that if the person testifying is not under arrest, though he may be under great suspicion at the time, and may be arrested after the examination, yet his testimony given under oath is admissible; but if he is actually under arrest, though it may be without a warrant, his testimony is inadmissible." The subject has been of frequent and elaborate consideration and discussion in the courts of New York, and the doctrine there prevailing is carefully summarized in *People v. Mondon*, 103 N. Y. 221: "When a coroner's inquest is held before it has been ascertained that a crime has been committed, or before any person has been arrested charged with the crime, and a witness is called and sworn before the coroner's jury, the testimony of that witness, should he afterwards be charged with the crime, may be used against him on his trial, and the mere fact that at the time of his examination he was aware that a crime was suspected, and that he was suspected of being the criminal, will not prevent his being regarded as a mere witness, whose testimony may be afterwards given in evidence against himself. If he desires to protect himself, he must claim his privilege. But if, at the time of his examination, it appears that a crime has been committed, and that he is in custody as the supposed criminal, he is not regarded merely as a

witness, but as a party accused, called before a tribunal vested with power to investigate preliminarily the question of his guilt, and he is to be treated in the same manner as if brought before a committing magistrate, and an examination not taken in conformity with the statute cannot be used against him on his trial for the offense."

The confession of guilt, or the admission of facts having a tendency to establish guilt, made by the accused after he is charged with, or is conscious of being suspected of crime, is not a species of evidence the common law favors. "*Nemo tenetur seipsum accusare*," is its inflexible maxim, a shield of protection, so that, as Blackstone puts it, "his guilt be not wrung out of himself, but rather be discovered by other means and other men." 4 Black. Com. 296. Before they are receivable as evidence against him, it must be shown that they were made freely and voluntarily, without the application of hope or fear; without extraneous pressure in either direction from other persons. Made in the presence of threatening circumstances, or under the pressure of calamity when, for ease or freedom, the man is so easily seduced, as different agitations may prevail, to speak falsehood or truth, the law presumes against their admissibility—presumes that they are not a basis upon which a jury can safely render a verdict. Whether confessions or admissions were freely, voluntarily made, is matter of law to be decided by the court; and if after a consideration of the condition of the accused and of the circumstances under which they were made, there is reasonable doubt of their freedom and voluntariness, the doubt must be resolved against their admissibility.— *Porter v. State*, 55 Ala. 95 ; *Bonner v. State*, *Ib.* 242.

The authorities in England distinguish the examination before a coroner, from an examination before a committing magistrate, who is forbidden to administer an oath to the prisoner. The New York authorities exclude the examination before the coroner, if taken while the prisoner was under arrest. The fact that the accused was under arrest, while it excites the vigilance of the court in inquiring into the circumstances attending a confession or admission, and will affect the weight of either before the jury, does not, according to our decisions, render them necessarily inadmissible.—*Franklin*

*v. State*, 28 Ala. 9 ; *Porter v. State*, 55 Ala. 95 ; *Redd v. State*, 68 Ala. 492. A committing magistrate is without authority to examine a prisoner, and if on the preliminary inquiry, without subjecting him to oath, he should interrogate him, the answers to the interrogation are deemed involuntary.—*Kelly v. State*, 72 Ala. 244. An inquest by a coroner has for its object not only the identification of the deceased person, and the manner or means of death, but, if death was caused by unlawful means or the unlawful act of another, the discovery of the person who employed the unlawful means, or did the unlawful act. It opens a similar, if not the identical field of inquiry which is opened on the preliminary inquiry before the committing magistrate, and terminates in the issue of a warrant for the arrest of the person discovered to have caused the death. Under the English statutes of Philip & Mary, if a prisoner under examination of his own guilt before a committing magistrate was sworn, his statement was not evidence, for the reason that the statute intended to leave him free to admit or deny his guilt, and the oath deprived him of the freedom. In *State v. Broughton*, 7 Iredell L. 96, RUFFIN, C. J., expressed the opinion that evidence, the equivalent of a confession of guilt, given by a prisoner before a grand jury while investigating the crime, could not be used as evidence against him, for the reason that the oath deprived him of the freedom to admit or deny guilt, and because the proceeding before the grand jury was in its nature inquisitorial. See also *State v. Matthews*, 66 N. C. 106.

There is much of force in the observation of Prof. Greenleaf : "It may, at first view, appear unreasonable to refuse evidence, merely because it was made under oath, thus having in favor of its truth one of the highest sanctions known in the law. But it is to be observed, that none but voluntary confessions are admissible ; and that if to the perplexities and embarrassments of the prisoner's situation are added the danger of perjury, and the dread of additional penalties, the confession can scarcely be regarded as voluntary ; but, on the contrary, it seems to be made under the very influences which the law is particularly solicitous to avoid." —1 Green Ev. (15 ed.) ,§225. The examination before the coroner was taken immediately after the death in the presence of all

the excitement a homicide of this character naturally engenders. The prisoner, an object of suspicion, of which he is conscious, is called and examined as a witness under the obligation of an oath. He was not free to remain silent, for silence would have been regarded as confession; he was not free to refuse to answer questions propounded to him except upon the ground that the answers would tend to criminate him, the answer magnifying whatever suspicion may have beclouded him, which naturally he would be solicitous to remove rather than to increase. The law does contemplate that parties accused or suspected of crime shall be compelled by its officers into such situations; and if compelled into them, their statements can not be regarded as voluntary, and a basis on which verdicts may be safely rendered. If this course of procedure was tolerated, the inquest of the coroner, would become an inquisition and every witness called before it compelled to be'ray himself. The statute provides for but one examination under oath of a party accused or suspected of crime, and that examination is not compulsory; it can not be had except upon his own request; and it will seldom be had until there is some time for deliberation and opportunity to obtain legal advice. There was, in my opinion, error in the admission of the examination before the coroner.

There was no error in the admission of the evidence of the declarations of the defendant made about three weeks before the homicide, when warned that the deceased was approaching him, "that damned little Jackson had better not bother me." It had some tendency to show the *animus* of the defendant to the deceased; and its weight was for the consideration of the jury.

The majority of the court do not concur in the views expressed upon the first point considered, and the result of their opinion is, that the judgment must be affirmed.

COLEMAN, J.—The court deems it unnecessary to consider any question other than the one relative to the admission of statements deposed to by the defendant upon his examination as a witness before the coroner's inquest. The record shows that the defendant was examined as a witness, before any charge had been preferred against him, and when he was not under arrest. The one question is, whether as matter of law the state-

ments of a witness must be held to be involuntary, merely because, when made, he was under oath, there being no accusation against him or other person. No authority has been cited in support of the proposition, and we are of opinion none can be found of recent adjudication. Even in those States where the rule prevails, that confessions of a party charged with an offense and under arrest are not admissible, it is held, that his statements are admissible when made under oath as a witness, there being no charge against him and he not being in custody. All the authorities cited in the, able opinion of the Chief Justice where the confessions were excluded, were cases, where the defendant was under arrest at the time they were made. The reasoning of the court in these cases, was to show that the custody of the party, rendered the confessions involuntary. In this State, the decisions are uniform, that confessions made by a prisoner in custody and charged with an offense, although made to an officer in charge of the defendant, are not thereby conclusively rendered involuntary and inadmissible.—*Jackson v. State*, 69 Ala. 249 ; *Sands v. State*, 80 Ala. 201 ; *McQueen v. State*, 94 Ala. 53. Much less can this court consistently declare, that the statements of a witness, not accused and not under arrest, are conclusively involuntary, because made under the sanction of an oath. To so hold, would place this court in antagonism to the other courts upon both propositions. "Formerly," says Mr. Roscoe in his work on Criminal Evidence, § 18, "it was doubted whether if a person who had given evidence before a coroner were afterwards made the subject of a criminal charge, arising out of the same facts, his deposition could be given in evidence against him ; but in several later cases they have been admitted," (citing the cases); and in the case of R. v. Biggdike, BOYLES, J., admitted in evidence a statement upon oath made by the prisoner voluntarily before the coroner, saying : "the authorities were in favor of the admissibility of the evidence, and he himself had no doubt on the subject."—Roscoe Cr. Ev., §18. The same rule is declared in Wharton on Cr. Law, Vol. 2, title, "Confessions," § 690. In 4 Am. & Eng. Encyc. of Law, p. 180, the text is as follows : "The testimony of a witness before the coroner, such person not being at the time under arrest, or charged with the crime, may be used

[Drake v. The State ]

against him on a subsequent trial for the alleged murder
of the deceased."—*Hendrickson v. People*, 2 Am. L. R.
531 (O. S.); see also 3 Russell on Crimes, pp. 411,
414, and notes.   By a statute of this State, a defendant,
at his own request, is made a competent witness.   He
has the opportunity to explain or qualify any statement
or confession he may have made.   There is less reason
now why such confessions may not be admitted, subject
to the same restrictions as other confessions.

The weight of authority and sound principle favor the
rule that the statements of a witness before a coroner,
given in under oath, not charged with the offense and
not under arrest, *there being no constraint*, are admissible
in evidence against him.

On other questions, the court concurs in  the conclu-
sions of the Chief Justice.

Affirmed.