[No. 4845.]

## TUTTLE v. THE PEOPLE.

1. **Evidence—Confessions—Statements of Defendant at Coroner's Inquest.**

Statements made at a coroner's inquest are admissible in evidence against the person making them in a subsequent prosecution for the homicide, if the statements were voluntary, but if not voluntary or if obtained by any degree of coercion, they must be rejected. And the question as to whether or not such statements were voluntary must be determined from the facts and circumstances surrounding each case and not by the application of any technical rule.

2. **Same.**

Where persons who were suspected of committing a murder and who knew they were suspected but who had not been arrested or formally charged with the murder, testified at the coroner's inquest without being represented by counsel and without being warned that their statements might be used against them or that they were privileged to refuse to testify if they so elected, statements made in their testimony under the circumstances of this case were not admissible in evidence against them in a trial wherein they were prosecuted for the murder.

3. **Same—Constitutional Law.**

Section 18, article 2 of the constitution, providing that "No person shall be compelled to testify against himself in a criminal case," was not intended merely for the protection of the individual in a criminal prosecution against himself, but to insure that a person could not be required, when acting as a witness in any investigation, to give testimony which might tend to show that he, himself, had committed a crime.

4. **Same.**

The constitutional provision that no person shall be compelled to testify against himself was not intended merely to protect a party from being compelled to make confession of guilt, but protects him from being compelled to furnish a single link

in a chain of evidence by which his conviction of a criminal offense might be secured.

5. **Informations — Separate Counts — Election — Principals and Accessories.**

Where an information charged several persons with the commission of a murder in four different counts, one of which charged them all with the crime as principals; another charged that one of the defendants committed the murder· and that the others ·advised and encouraged him; the third charged that a different one of the defendants committed the murder and that the others aided and encouraged him; and the fourth charged all of the, defendants with aiding and abetting some unknown person who committed the murder, it was not an abuse of discretion for the trial court to refuse to require the prosecution to elect upon which count it would rely for a conviction, and on review the supreme court will not interfere with the exercise of discretion by the trial court.

*Error to the District Court of Washington County: Hon. E. E. Armour, Judge.*

Messrs. Stuart & Murray, Messrs. Wolcott, Vaile & Waterman and Mr. T. J. Leftwich, for plaintiffs in error.

Mr. N. C. Miller, attorney general, Mr. I. B. Melville and Mr. Ralph Talbot, for the people.

Chief Justice Gabbert delivered the opinion of ·the court.

Plaintiffs in error were convicted of the murder of Joseph Meenan. The first point we shall consider relates to the admissibility of statements made by the defendants at the coroner's inquest. They were subpœnaed as witnesses to appear before the coroner's jury, then engaged in investigating the cause of the death of deceased and ascertaining the guilty parties, and were duly sworn and testified before that body. At this time the defendants were not under arrest, nor had any information been filed against them, but they were suspected of being guilty

of Meenan's murder, and knew that they were so sus-
pected; at least, Tuttle knew he was suspected, and
from the nature of the questions propounded they
must have known that they were both suspected.
Their statements were not confessions or admissions
of guilt, but related principally to their whereabouts
and movements at and about the time of the homicide.
They made no objection to testifying, were not rep-
resented by counsel, and were not warned that their
statements might be used against them, or that they
were privileged to refuse to testify if they so elected.
Their counsel contend that the statements were inad-
missible at the trial because not voluntary.  On
behalf of the people, the learned attorney general
contends that the general rule now is, that if the
person coming before the coroner's jury is not under
arrest at the time he testifies, whether he comes with
or without process, his statements at the inquest can
be used against him in a trial under an indictment
or information charging him with the particular
crime then under investigation.

The particular question presented by the record
in this case has been discussed by many courts in
England and in this country, and has also been the
subject of discussion by learned writers on criminal
law.  In this state it is one of first impression, and
we are free to determine it by the application of
those principles which should control with due regard
to the rights of the accused and the people.  All the
authorities agree that voluntary admissions of a
party are admissible as testimony at his trial for the
crime to which the admissions relate.  The apparent
conflict in the authorities arises on the proposition as
to when admissions by a party before a coroner's jury
are to be deemed voluntary, and when not.  The text
writers, in treating of this subject, say, in substance,
that the mere fact that at the time of the inquest the

party was suspected of the homicide will not exclude his incriminating statements made to the coroner's jury, if they are voluntary.—Underhill on Evidence, § 131; Whart. on Crim. Ev. (9th ed.), § 664.

In 3 Russell on Crimes, *412, it is said: "And it may be laid down generally that a statement upon oath by a person not being a prisoner, and where no suspicion attached to him, the statement not being compulsory nor made in consequence of any promise of favor, is admissible in evidence against him on a criminal charge."

The early English cases held that the statements under oath of a person before a coroner's jury, although not then specifically charged with the crime, were not receivable in evidence against him when on trial for the murder being investigated.—*Rex v. Lewis,* 6 Carr. & Payne, *161; *Regina v. Owen et al.,* 9 Carr. & Payne, 149.

The conclusion in these cases seems to be based upon the theory that statements by the accused under oath could not be regarded as voluntary.

Greenleaf, in his work on Evidence, § 225, in speaking on the subject, says:

"But it is to be observed that none but voluntary confessions are admissible, and that if to the perplexities and embarrassments of the prisoner's situation are added the danger of perjury and the dread of additional penalties, the confession can scarcely be regarded as voluntary; but, on the contrary, it seems to be made under the very influences which the law is particularly solicitous to avoid."

In discussing this question, the supreme court of Kansas, in *State v. Taylor,* 36 Kan. 329, held that the testimony of a defendant taken at a coroner's inquest could be read at his trial on behalf of the state, where it was given not under duress, or where

the defendant was not compelled by subpœna or otherwise to give his testimony at the inquest.

*Twiggs v. State,* 75 S. W. 531, was a case where the defendant testified as a witness before a grand jury, then engaged in investigating a case against a third person. The defendant was before the grand jury by virtue of an attachment issued. From his examination a case against him was developed. He was subsequently indicted for perjury predicated upon his testimony before the grand jury. At his trial on this charge his statements before the grand jury were admitted on behalf of the state. The court held that where a defendant is under arrest or constraint, or held as a witness, and testifies about an offense of which he is suspected, his statements in regard to such matters cannot be used against him unless, previous to making them, he was warned.

In *Farkes v. State,* 60 Miss. 847, it was decided that testimony given before a coroner's jury investigating a homicide by one under arrest because suspected of having committed the crime, is not admissible in evidence against him when tried upon an indictment subsequently found charging him with the commission of the crime investigated by the coroner's jury.

In *State v. O'Brien,* 18 Mont. 1, it was held that it was error to admit the statements of a defendant before the coroner to be introduced at his trial for the homicide being investigated, where it appeared that he was called before that official immediately after the homicide and testified without any knowledge of his lawful rights, without the aid of counsel, and under the belief that he had to answer the questions put to him.

In *State v. Clifford,* 86 Iowa 550, it was held that where one accused of a crime is taken before a grand jury by its direction, and not by his own voli-

tion, statements then made by him without being
informed of his rights, or of the possibility of their
being used in evidence against him, are not admis-
sible on a trial for the offense to which the statements
related, since they were not voluntarily made.

In *Wilson v. State,* 110 Ala. 1, it was held (quot-
ing from the syllabus), that: "On a trial for mur-
der, the statements made by the defendant on his
examination at the coroner's inquest, at which time
he was neither under arrest nor accused of the crime,
are admissible in evidence, and the fact that such
statements were made under oath does not render
them involuntary and inadmissible." The gist of
the decision, however, is contained in the last para-
graph of the opinion, wherein it is stated:

"The weight of authority and sound principle
favor the rule that the statements of a witness before
a coroner, given in under oath, not charged with the
offense, and not under arrest, *there being no con-
straint,* are admissible in evidence against him."

*Hendrickson v. People,* 10 N. Y. 13, and *Teach-
out v. People,* 41 N. Y. 7, appear to be regarded by
text writers and other courts following the views
announced in these cases, as the leading ones sup-
porting the contention of the attorney general. They
appear to be based upon the proposition that in all
cases where a party is not under arrest, or before
an officer on a charge of homicide, that in testifying
at a coroner's inquest he is to be regarded merely as
a witness, and although he might refuse to testify,
unless he does so or is compelled to answer after
having declined to do so, that his statements are to
be regarded as voluntary. It will be observed, how-
ever, in the Teachout case, the defendant was
informed by the coroner that rumors implicated him,
and that he had a right to refuse to testify.

In *People v. Mondon,* 103 N. Y. 211, the court

of appeals reaffirms the doctrine announced in the Hendrickson and Teachout cases, but holds that if at the time of the examination of a defendant before the coroner's jury, it appears that a homicide has been committed, and that he is in custody as the supposed criminal, he is not regarded merely as a witness, but as a party accused, and is to be treated in the same manner as if brought before a committing magistrate.

Indiana appears to have followed the New York cases in *Epps v. State,* 102 Ind. 539; *Davidson v. State,* 135 Ind. 254, although in the latter case the decision of the court appears to some extent to be based upon the provision of a statute of the state, sec. 1802, Rev. Stats. 1881, which the court construes as rendering all confessions by an accused admissible in evidence against him, except such as are made under the influence of fear produced by threats.

*Lovett v. State,* 60 Ga. 257, holds that the minutes of evidence given by the prisoner before the coronor are admissible on his trial for the homicide to which the inquest related, but does not state the conditions under which such testimony was given before the coroner.

In *State v. Mullins,* 101 Mo. 514, the testimony of a defendant given before a coroner at an inquest, was held admissible because from the circumstances of that case the defendant was to be treated as one occupying the position of a defendant at a preliminary examination, and as he would have a right to testify at such examination, his statements were admissible against him provided he testified without compulsion.

In *State v. Gilman,* 51 Me. 206, it was held that on a trial for murder, the prisoner's testimony at the coroner's inquest upon the body of the person alleged to have been murdered, given without objec-

tion by him, before his arrest, though after he had been charged with the murder, but who had been cautioned that he was not obliged to testify to anything which might incriminate himself, was admissible.

*Dickerson v. State*, 48 Wis. 288, and *Bennett v. State*, 87 Ga. 622, simply hold that testimony given by a defendant as a witness at the trial of another for murder, but while under arrest upon suspicion of having committed the same crime, there being no reason for believing that such testimony was not entirely voluntary, is admissible against him at a trial for the same offense.

The foregoing are the principal cases cited by respective counsel. From these cases it appears that in some jurisdictions it is held that the statements of a party under oath before the coroner's jury, are not to be regarded as voluntary, while in others the converse is held; that where a party is under arrest at the time he testifies before a coroner's jury, his statements are not to be regarded as voluntary unless he was fully warned; that if the party testifying is accused of the crime under investigation, although not formally arrested, or if he is suspected of the crime at the time he testifies, and knows this fact, that in some cases it is held his testimony is voluntary, and in others not; and that the New York cases are, as before indicated, based upon the proposition that until a party is under arrest or taken in charge for the commission of the homicide, he is to be regarded at the coroner's inquest the same as any other witness, and unless he claims the privilege of not making statements which may tend to incriminate him, or requests to be excused from testifying, he will be presumed to have done so voluntarily. It is impossible to reconcile the various cases to which we have referred when considered in connection with

the facts disclosed upon which they are respectively·
based. Possibly the conflict is the result of a failure
to contradistinguish "voluntary" and "involuntary"
admissions, or to observe that the word "voluntary"
is not in all instances used in contradistinction to
"compulsory." Failure to claim the privilege of
not being required to make incriminating statements,
or testifying without objection at inquests seems, in
some cases, to have been regarded sufficient from
which to deduce the conclusion that testimony was vol-
untary without considering whether or not extrane-
ous influence was the inducing cause of the state-
ments by the accused. After all, as pertinently
remarked in *State v. Young,* 119 Mo. 495 (510), and
*State v. Gilman, supra,* the important question to
determine in cases of this character, is, was the state-
ment voluntary? If this question can be answered
in the affirmative, then the statement is clearly
admissible on a principle, the soundness of which is
not disputed, but if not voluntary or if obtained by
any degree of coercion, then it must be rejected. No
hard-and-fast-rule can be formulated which would
serve as the test in every instance, but each case must
be determined upon its own circumstances. The
mere fact that an oath is or is not administered can-
not, ordinarily, of itself serve as a true test. Some
persons might believe that after service of a sub-
pœna and the administration of an oath they would
be compelled to answer all questions, while others
would not be so influenced. Surrounding circum-
stances must necessarily, in almost every case, be
taken into consideration in determining whether a
statement was voluntary or not, and that question
ought to be determined from the facts and not by the
application of any technical rule. A party might·
appear before a coroner's jury without process and
testify, and state that he did so voluntarily, and yet

circumstances might be such that he was impelled to do so by extraneous influences. If the testimony of a party who is actually under arrest charged with the homicide being investigated, given before a coroner's jury under certain conditions, is not admissible, it is difficult to state any reasonable ground which would make that same testimony, under the same conditions, admissible because he was not under arrest, although at the time he knew he was suspected of the crime being investigated and was aware of that fact. The consequences of his statements in the one case should be no different from what they would be in the other, and the same reasons which would render his testimony inadmissible in the first instance ought to have the same effect in the second, because in neither case should it be presumed that he would voluntarily make any statements tending to fasten the crime upon himself, nor can he be required to do so. The distinction attempted to be drawn as to when a defendant is to be regarded as a party to an investigation by a coroner, and when merely a witness, does not appear to rest upon a solid ground when it is taken into consideration that the question of the admissibility of the statements at the inquest turns upon the proposition as to whether they are voluntary or not. A party can no more be required to involuntarily incriminate himself when not under arrest than when he is, and the fact that he is or is not a party, or is or is not under arrest, falls far short of furnishing a test by which the voluntariness of his statements may be determined.

A statement, to have been voluntarily made, must proceed ''from the spontaneous suggestion of the party's own mind, free from the influence of any extraneous, disturbing cause.''—*State v. Clifford, supra.* From this definition it seems to us clear that the statements of the defendants before the cor-

oner's jury cannot be regarded as voluntary, when all the surrounding circumstances are considered. True, they were not under arrest; they did not claim the privilege of refusing to testify because their statements might tend to incriminate them, or because of the fact that they were suspected of being guilty of the homicide; but in all probability, why? To have made such claims would have tended to increase suspicion against them, instead of allaying it, and in the state of the temper of the community where the homicide had occurred, would almost certainly have resulted in their immediate arrest. They were thus placed in a position where they must necessarily have realized that they were obliged to answer every question propounded to them, or suffer the serious consequences which would almost certainly have followed.

1 Greenleaf, § 225, in treating this subject, says: "The manner of examination is, thereore, particularly regarded, and if it appears that the prisoner had not been left wholly free, and did not consider himself to be so in what he was called upon to say, or did not feel himself at liberty wholly to decline any explanation or declaration whatever, the examination is not held to have been voluntary."

One reason why admissions against interest by parties accused of crime are only admissible when voluntary, is, that they should be received with great caution, because they may not be true, for the mind of an accused, when oppressed by the calamity of his situation, is often influenced by hope or fear to make an untrue statement, when, as a matter of fact, the truth would be better. On this subject the supreme court of New York, in *People v. McMahon*, 15 N. Y. 384, says:

"The principle upon which this rule is based is obvious. It is that we cannot safely judge of the relation between the motives and the declarations of

the accused, when to the natural agitation consequent upon being charged with crime is superadded the disturbance produced by hopes or fears artificially excited.''

The wisdom of this rule is particularly apparent in the present case. The statements made by the defendants before the coroner's jury are claimed on behalf of the state to be untrue, and much stress is laid on the untruthfulness of these statements, as tending to establish their guilt. Their desire to ward off suspicion at the time they were called before the coroner may have prompted these statements, although untrue. We are of the opinion that in the circumstances of this case, the statements made by the defendants before the coroner's jury were not voluntary, and it was error to admit them at the trial.

There is an additional reason why the statements of the defendants before the coroner's jury should be excluded. The constitution of the state, section 18, art. 2, provides that ''No person shall be compelled to testify against himself in a criminal case.'' This provision was not intended merely for the protection of the individual in a criminal prosecution against himself, but its purpose was to insure that a person could not be required, when acting as a witness in any investigation, to give testimony which might tend to show that he, himself, had committed a crime.—*Counselman v. Hitchcock*, 142 U. S. 547; *Emery's Case*, 107 Mass. 172. Any other rule would render it possible to deprive parties of the constitutional safeguard referred to. Officials engaged in ferreting out crime could refrain from arresting or taking into custody those suspected of its commission, and under the guise of bringing before a coroner's jury, as witnesses, persons who would be afraid to assert their constitutional rights,

secure from their own lips testimony which could afterwards be used against them. This, though an indirect way of seeking to avoid the constitutional provision, would as directly deprive persons of its protection as though they had been required to give testimony against themselves after arrest.

The attorney general contends that the admissions made were not confessions of guilt, and for that reason do not come under the general rule regulating the admissibility of confessions. We do not think this objection is tenable. The constitutional provision was not intended to merely protect a party from being compelled to make confessions of guilt, but protects him from being compelled to furnish a single link in a chain of evidence by which his conviction of a criminal offense might be secured.—*State ex rel. v. Simmons Hardware Co.,* 109 Mo. 118; *State v. Spier,* 86 N. C. 600.

Crimes should be punished. Officials are to be commended for taking prompt steps to apprehend criminals, but whatever may be the opinion of a community with respect to the guilt of those accused of crime, or however convincing the testimony may be against them, their rights guaranteed by the constitution must be respected.

The next error assigned on behalf of the defendants relates to the refusal of the court to require the state to elect upon which of the four counts in the information it would rely for conviction. In all, six persons were charged in one information with the murder. The first count charged all of the defendants as principals; the second, that Shanks committed the murder and the other five advised and encouraged him; the third, that Perry Tuttle committed the crime, and the remaining five aided and encouraged him; and the fourth, that all six aided and abetted some person unknown, who committed the

crime. The different counts relate to the same offense, and charged that it had been committed by the defendants, either as principals or accessories. Under our statute, they were to be regarded as principals, and the different counts did no more than state the offense in such way that it might be supported according to the facts which the testimony might establish. In these circumstances, the motion interposed by the defendants was addressed to the sound discretion of the court. This discretion will not be interfered with on review except it clearly appears that it was abused.—*Roberts v. People,* 11 Colo. 213; *Kelly v. People,* 17 Colo. 130. It does not appear there was any abuse of discretion in denying the motion.

Errors are assigned which relate to improper cross-examination of a witness; rulings on the admissibility of testimony; alleged errors in the instructions; and alleged misconduct of counsel for the people. We do not believe it is necessary to pass upon these various questions. If errors were committed with respect to any of these matters, it does not necessarily follow that they will be repeated at another trial.

The final question presented by counsel for defendants relates to the information, it being claimed that it was not verified, or supported by affidavits showing probable cause, in conformity with the requirements of the statute and the provisions of the constitution. This is undoubtedly an important question, but we decline to pass upon it at the present time. We see no reason why, at another trial, this question may not be obviated by appropriate action on the part of the district attorney. In all prosecutions the prosecuting officials should be careful not to permit a debatable question to be injected into a case which it is within their power to

eliminate without prejudice to the rights of the people.

The judgment of the district court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

STEELE, J., although hearing argument, did not participate in the decision.